[637 NYS2d 967]

NEIL H. CAPLAN, Appellant-Respondent, v USHER T. WINSLETT et al., Respondents-Appellants.

First Department, February 29, 1996

## APPEARANCES OF COUNSEL

*Ridley M. Whitaker* and *Anju Uchima* for appellant-respondent.

*Robert F. Brodegaard* of counsel *(Thacher Proffitt & Wood,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

WALLACH, J.

Plaintiff, a former employee of defendant corporations (grain companies), appeals from an order dismissing his complaint which alleged two separate, slanderous utterances: (1) a remark assertedly made by defendant Winslett on April 16, 1993 (words around the courthouse), and (2) remarks assertedly made by plaintiff's boss, defendant Bigham, on August 25, 1992, following plaintiff's firing (words around the workplace). Defendants cross-appeal from so much of the order as denied the imposition of sanctions for frivolous litigation. The main appeal also requires us to consider a curious procedural contrivance adopted by the motion court, and its possibly deleterious effect on the outcome of the proceedings.

(1) <u>Words around the courthouse.</u>

■ ■ It is not disputed that in April 1993, defendant Winslett, an associate of the law firm of Thacher Proffitt & Wood (joined as a defendant, like the grain companies, under respondeat superior), represented the grain companies in an action brought by an entity known as Coffee Trade Services Inc. (Coffee Trade), involving claims of breach of a loan agreement by his client and counterclaims for alleged default in installment payments due from Coffee Trade. On the date in question, Winslett attended a calendared conference in this appellate courthouse, accompanied by Alan Langus, Esq., house counsel for the grain companies.

John M. Wilson, Esq., the lawyer who represented Coffee Trade at the conference, had made an affidavit for plaintiff in

an earlier discontinued Federal action *(see,* at 153-154, *infra),* which was based on similar defamations. That affidavit resurfaces as an exhibit to the complaint herein, and supports the allegation that Winslett stated: "I thought Caplan was on Coffee's payroll; when we heard the tapes it was apparent he was unstable or on drugs."

The "tapes" referred to in the comment are the key to a full understanding of its import. As is clear from the 46 introductory paragraphs of his complaint, plaintiff was the officer at the grain companies directly in charge of the Coffee Trade account. In the course of discovery in the Coffee Trade litigation, that party produced transcriptions of telephone calls made by plaintiff to its personnel which, together with other evidence, established plaintiff's disloyalty to his erstwhile employer. Prior to any actual proffer of settlement proposals developed by the grain companies, plaintiff is recorded, *inter alia,* as advising Coffee Trade to reject his employer's first settlement offer on the table because more would be in the offing, and warning his contacts at Coffee Trade to be wary of possible expiration of the Statute of Limitations.

In *Gross v New York Times Co.* (82 NY2d 146, 152-153), the Court of Appeals set forth New York's three-pronged test for determining whether expressions are factual, and thus actionable, or are constitutionally protected as "opinion". The first requirement is that the specific language under scrutiny have a precise meaning which is readily understood by the parties privy to the communication. Words communicated to a general audience may not be defamatory if the innuendo has a hidden or special meaning to only a limited audience.

Second, the statement must be capable of being proven true or false. The tort of slander involves utterance of a statement that is both false and defamatory *(see, Brian v Richardson,* 87 NY2d 46, 51). Unlike a statement of fact, a purely hypothetical statement may be incapable of proof of truth or falsity without probing the mind of the communicator.

Finally, and most important for our purpose, the communication must be analyzed in the context in which it was uttered *(Brian v Richardson, supra,* at 51). Examination of the content of the entire communication, as well as its tone and apparent purpose, is a priority concern *(Steinhilber v Alphonse,* 68 NY2d 283, 293), even more so than the factual analysis *(Immuno AG. v Moor-Jankowski,* 77 NY2d 235, 254, *cert denied* 500 US 954). "In addition to considering the immediate context in which the disputed words appear, the courts are required to take into

consideration the larger context in which the statements were published, including the nature of the particular forum." (*Brian v Richardson, supra,* at 51.) The context in *Gross* and *Immuno AG.* was a written exposé; in *Brian,* an op-ed piece; in *Steinhilber,* a recorded telephone message; and in *600 W. 115th St. Corp. v Von Gutfeld* (80 NY2d 130, *cert denied* 508 US 910, 113 S Ct 2341), a statement made at a public hearing. In striking contrast is the context in which the allegedly defamatory words were uttered here (a lawyer-to-lawyer estimate as to plaintiff's credibility and value as a witness).

Having exited this courthouse[1] after a preappeal conference on plaintiff's allegedly wrongful discharge action, Winslett remarked to his opposing attorney that he had initially thought plaintiff was in league with his employer's adversary, but after he heard plaintiff's tape-recorded voice, he believed plaintiff was either on drugs or mentally unstable. If either part of the statement can be viewed as pure opinion, it is nonactionable without further elucidation. But more important, because of its context, the entire statement must be viewed as absolutely privileged.

An absolute privilege is based upon a communicator's official participation in the process of government (*Park Knoll Assocs. v Schmidt,* 59 NY2d 205, 209). It is intended to insulate him from any inhibitions in carrying out that function (*Toker v Pollak,* 44 NY2d 211, 219). While there is room for interpretation as to what constitutes participation in a judicial governmental proceeding (*see, Pecue v West,* 233 NY 316, 320), attorneys are considered as much protected participants in this process as are Judges, jurors, parties and witnesses. Lawyers "are granted this protection for the benefit of the public, to promote the administration of justice, and only incidentally for the protection of the participants. Thus * * * a lawyer has immunity for defamatory words spoken in a judicial proceeding * * * The immunity does not attach solely because the speaker is a[n] * * * attorney * * * but because the statements are, in the words of Lord MANSFIELD, 'spoken in office' " (*Park Knoll Assocs. v Schmidt, supra,* at 209-210). As Judge Cardozo noted (*Andrews v Gardiner,* 224 NY 440, 446), an attorney is entitled to the same immunity as any other participant in a judicial

---

1. According to Winslett, the remark was delivered "on the courthouse steps," whereas Wilson places the utterance simply "on a public street." In either event, the exchange clearly took place between the two attorneys as they were departing the scene of a judicial proceeding in which they had jointly participated.

proceeding. Furthermore, the privilege is not limited to statements made in open court, but also embraces communications between attorneys (*Klein v McGauley*, 29 AD2d 418, 420).

As a matter of policy, attorneys should be given maximum freedom in the quest for justice for their clients (Restatement [Second] of Torts § 586). Although the privilege will not protect gratuitous statements uttered wholly "outside the cause", we have long been guided by the rule that "no strained or close construction will be indulged in to exempt a case from the protection of privilege" (*Moore v Manufacturers' Natl. Bank*, 123 NY 420, 426). As long as the subject of an out-of-court communication relates to pending or contemplated litigation, and is made in connection with a judicial proceeding (*cf., Uni-Service Risk Mgt. v New York State Assn. of School Bus. Officials*, 62 AD2d 1093), it furthers an interest of social importance and should be protected (*Libco Corp. v Adams*, 100 Ill App 3d 314, 317, 426 NE2d 1130, 1132).[2] Discussion between attorneys representing opposing parties tends to conserve judicial and client resources by limiting issues, and might even resolve the litigation; if anything, this should be encouraged (*Dean v Kirkland*, 301 Ill App 495, 23 NE2d 180, 188).

It follows that because the utterance complained of is almost surely opinion, but in any event is protected by absolute privilege, the cause of action fails.

(2) Words around the workplace.

When he fired plaintiff in August 1992, defendant Bigham allegedly told other employees that the termination was "for insubordination and violating company policy." This action was commenced in March 1994.

An action for slander must be commenced within one year (CPLR 215 [3]). Plaintiff argues, *inter alia*, that the action was timely in light of New York's "tacking" statute (CPLR 205 [a]), which permits commencement of a "new action" within six months after involuntary termination of a prior timely commenced action on grounds which do not involve the merits. But the complaint in that prior action, brought in July 1993 in United States District Court for the Eastern District of New York (and dismissed for lack of jurisdiction), fails even to mention Bigham. Plaintiff argues that defendants concealed Big-

---

2. The privilege does not extend to remarks delivered by an attorney directly to his client's adversary (*cf., Petrus v Smith*, 91 AD2d 1190; *Demopolis v Peoples Natl. Bank*, 59 Wash App 105, 796 P2d 426). Such a communication would serve no useful purpose, and thus its speaker cannot be shielded from liability.

ham's involvement during the Federal litigation. This argument fails on two counts. First, defendants were under no duty to volunteer Bigham's involvement (*cf., Simcuski v Saeli*, 44 NY2d 442). Second, the Federal complaint alleged, in general terms, that his employer's *attorney* had made a *written* statement to the effect that plaintiff "acted in a disloyal manner in connection with the performance of his duties". The connection between that allegation against attorney Langus and the causes asserted against defendant Bigham herein is too tenuous to be considered emanating from "the same transaction or occurrence" (CPLR 205 [a]).

This cause of action suffers from additional infirmities. For one thing, it falls short of the pleading standard required in CPLR 3016 (a) by referring vaguely to the "effect" of Bigham's alleged statement, while quoting only a fragment therefrom. An even more fundamental defect is that the statement seems to be clearly protected by the qualified privilege that would attach to a communication from a supervisor to his subordinates, explaining the reason for the departure of a colleague (*Kasachkoff v City of New York*, 107 AD2d 130, 134, *affd* 68 NY2d 654). However, it is unnecessary to consider these defects inasmuch as the claim itself is clearly time barred.

(3) Procedural Error.

■ The order appealed from recites that five months earlier, the court had referred the issues raised in defendants' dismissal motion "to Milton Gould, Esq., to hear and report (with recommendations), based on Mr. Gould's prior appointment as Special Master in an underlying litigation. Upon the entire record, *and the report of the Special Master*, the court disposes of the motion as follows". (Emphasis added.)

Promptly following issuance of the order, plaintiff made written demand upon the "Special Master" for a copy of his report. Mr. Gould replied to the effect that his "report" was intended solely for the court and he was "not at liberty" to provide a copy unless he was so instructed by the Judge. Apparently, no such instructions were forthcoming, and the contents of the report remain a matter of conjecture.

This was a serious procedural flaw which, under different circumstances, could well amount to a denial of due process and require a reversal of the order appealed from.[3] To the extent that Mr. Gould might be viewed as a Referee, there was

---

3. We note in passing that Mr. Gould gave the parties an opportunity to object to his role at the outset of the hearing, and no objection was heard.

no compliance with CPLR 4311, which requires a clear delineation of a Referee's duties under an order of reference, nor was there any compliance with CPLR 4212, in which an issue of fact referred to a Referee "shall specify the issues to be submitted." Furthermore, a Referee is required to file his report with the court within 30 days after a final submission of the matter (CPLR 4320 [b]). Here, we have only the transcript of a hearing conducted by the "Special Master", with no report at all. Since there was no motion to confirm the report of the Special Master (CPLR 4403), plaintiff was denied any opportunity to file objections thereto.

The court's reference to "underlying litigation" is ambiguous as to whether Mr. Gould acted in the original Coffee Trade litigation, or in the later action brought by the grain companies against plaintiff (commenced almost simultaneously with the latter's discharge) to enjoin him from disclosing confidential matters to Coffee Trade. No copy of an order designating Mr. Gould in any capacity is made a part of the appellate record.

In view of the entire situation, it is hard not to sympathize with Mr. Gould. It has been said of Queen Victoria's troops in Africa that they were always fully prepared for the last war preceding the one at hand;[4] for example, when the Boer War rolled around, they were completely up to snuff for the Zulu War, and as far as the Zulus were concerned, they were then really primed for another go with the Ashantis. The events here may suggest that the services Mr. Gould rendered in previous related litigation were viewed as so indispensable that his discharge in plaintiff's latest campaign was too painful even to contemplate.

The defenses pleaded by defendants herein presented only questions of law for the court (*see, Lefler v Clark*, 247 App Div 402, 403). Since this was a motion to dismiss for failure to state a cause of action, the issue should have been addressed by the court itself, without the interposition of an *minence grise*, even if the *minence* far exceeded the *grise*. To interpose such a functionary was error for the same reason that a trial court should not rely on the testimony of a legal expert on a question of domestic law, regardless of the witness' vast experience. As observed by the late Judge Gurfein, "experience is hardly a

Even though the issue was thus not formally preserved for appellate review (CPLR 4017), we can still consider it, in the interests of justice, where the error was "fundamental" (4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4017.09).

4. *See generally*, Farwell, *Queen Victoria's Little Wars* (W. W. Norton & Company, New York and London [1972]).

qualification * * * when there is a knowledgeable gentle[person] in a robe whose exclusive province it is to instruct the jury on the law. The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge—surely an inadmissible inference in our system of law." (*Marx & Co. v Diners' Club*, 550 F2d 505, 512, *cert denied* 434 US 861.)

Notwithstanding the fundamental error presented by the aberrational role of Mr. Gould, we confidently conclude that the ultimate effect of this error was truly harmless, inasmuch as the issues presented before both the IAS Court and this Court were entirely matters of law, and the record was fully developed with respect to those. The Gould report, whatever its formal or informal character, remains pure surplusage and could have no impact on our view of the case. Most significantly, plaintiff does not urge that the "reference," if it may be so described, interfered in any way with the full advocacy of his position.

(4) Sanctions.

We agree with the trial court's ruling declining to impose sanctions upon plaintiff based on the prosecution of an allegedly frivolous lawsuit. It is recognized that the disposition here rests in part upon what we perceive to be a desirable expansion of the absolute privilege applicable to attorneys.

We have considered plaintiff's other points raised on this appeal, and find them to be without merit.

Accordingly, the order of Supreme Court, New York County (Beatrice Shainswit, J.), entered March 7, 1995, which granted defendants' motion to dismiss the complaint for failure to state a cause of action, should be affirmed, without costs, notwithstanding the erroneous reference.

ELLERIN, J. (concuring). I concur in the result only.

SULLIVAN, J. P., RUBIN and MAZZARELLI, JJ., concur with opinion by WALLACH, J.; ELLERIN, J., concurs in a separate opinion.

Order, Supreme Court, New York County, entered March 7, 1995, affirmed, without costs.