[674 NYS2d 280]

Jones Lang Wootton USA et al., Appellants, v LeBoeuf, Lamb, Greene & MacRae et al., Respondents and Third-Party Plaintiffs-Respondents. Old Republic Insurance Company et al., Third-Party Defendants-Appellants.

First Department, April 16, 1998

### APPEARANCES OF COUNSEL

*John F. Triggs* of counsel (*Camhy Karlinsky & Stein, L. L. P.,* and *Grippo & Elden,* attorneys), for appellants and third-party defendants-appellants.

*Geri S. Krauss* of counsel (*Herrick, Feinstein, L. L. P.,* attorneys), for respondents and third-party plaintiffs-respondents.

### OPINION OF THE COURT

RUBIN, J.

It is said that a party may not accomplish by indirection that which it is forbidden to do directly (*e.g., Blake Elec. Contr. Co. v Paschall,* 222 AD2d 264, 267; *Intima-Eighteen, Inc. v Schreiber Co.,* 172 AD2d 456, 457, *lv denied* 78 NY2d 856). Remarkably, plaintiff in interest in this case (third-party defendant Old Republic Insurance Company) has managed to accomplish directly that which it is forbidden to do, even indirectly, as a matter of public policy.

I. THE LAWSUITS

This is a collateral action arising out of a dispute over excess insurance coverage provided to plaintiffs Jones Lang Wootton USA and JLW Realty, Inc., a general partner in Wootton (collectively, JLW), which together function as investment advisors, property managers and leasing agents. The controversy

has its source in a failed real estate venture, resulting in a third-party action referred to in the papers as the *Webb* action that was brought against JLW and two of its senior employees and ultimately settled (*East 32nd St. Assocs. v Jones Lang Wootton USA*, Sup Ct, NY County, index No. 10938-89). North River Insurance Co. provided primary professional liability coverage to JLW, and third-party defendant Old Republic Insurance Company provided excess insurance coverage, which is the basis of the underlying dispute.

The settlement of the *Webb* action, rather than put an end to the litigation, spawned several other lawsuits. In the first of these actions (*Old Republic Ins. Co. v Pariser*, Sup Ct, NY County, Feb. 24, 1995, Ira Gammerman, J., index No. 110097-94), the carrier sued JLW, its own client, to recover on a contract denominated a "Funding Agreement". Pursuant to this agreement, Old Republic advanced funds to JLW to settle the *Webb* action. The insurer's theory in its lawsuit against JLW and the firm's principals, Paul E. Pariser and Simon J. Milde, is restated in this action. Old Republic maintains that because it did not consent to the compromise of the *Webb* action, it was entitled to recover the monies it advanced to JLW to fund the settlement of that dispute. Old Republic contends that the reservation of its rights in the funding agreement permits it to assert JLW's failure to obtain the carrier's written consent to the settlement as the basis for avoiding liability under the terms of its excess insurance policy. Supreme Court agreed with the carrier's reasoning, granting summary judgment to Old Republic against JLW in the amount of $2,478,088, together with interest, costs and disbursements, and dismissing JLW's defenses and counterclaims (*Old Republic Ins. Co. v Pariser, supra*).

Significantly, no appeal was taken from this ruling. Instead, soon after the decision was filed, JLW and Old Republic entered into an agreement dated April 5, 1995, in which JLW agreed to pay Old Republic $1.2 million, assigning to the carrier any claim it might have against LeBoeuf for legal malpractice (*see*, General Obligations Law § 13-101). It was agreed that Old Republic would select counsel for the action against LeBoeuf and would retain complete control over the litigation. Old Republic further agreed not to enter judgment against JLW, and both sides waived their right to appeal from the award of summary judgment.

Predictably, the next suit, the principal action in this case, was brought in the name of JLW against LeBoeuf for legal

malpractice arising out of the representation the law firm provided to JLW in the *Webb* action. The complaint seeks damages in excess of $2.8 million, representing the amount awarded to Old Republic against JLW, plus prejudgment interest and legal fees. Individual defendant James F. Johnson, IV, the LeBoeuf partner principally responsible for JLW's representation, is charged with failing to advise his client that settlement of the *Webb* action without the written consent of the carrier was a breach of a condition of the policy, permitting the insurer to avoid liability. In their answer, LeBoeuf and Johnson emphasize that JLW failed or refused to take an appeal from Supreme Court's ruling. They further assert that the complaint is barred by the anti-champerty statute (Judiciary Law § 489) and by the doctrine of waiver and estoppel. They also contend that JLW, having assigned the malpractice claim to Old Republic, is not the real party in interest in this action. The gravamen of the law firm's defense, however, is that whatever damages JLW may have sustained are the result of its refusal to take an appeal from the award of summary judgment in *Old Republic Ins. Co. v Pariser* (*supra*).

In the final suit, the third-party action herein, LeBoeuf charges JLW's carrier and agents—specifically, its counsel—with defamation and tortious interference with contractual relations. Third-party defendant Chicago Underwriting Group, Inc. was Old Republic's underwriting manager and claims administrator. Third-party defendant Grippo & Elden is the Chicago law firm that represented Old Republic in negotiating and documenting both the settlement and funding of the *Webb* action. Third-party defendant Philip C. Stahl is the Grippo & Elden partner with primary responsibility for the firm's representation of the excess carrier. The cause of action for defamation is predicated on a statement made at a settlement meeting held in Chicago during which Mr. Stahl is alleged to have told certain principals of JLW that, "were it not for your lawyers' malpractice, we wouldn't be here." It is further asserted that this and other acts and aspersions constitute tortious interference with the contractual relationship represented by the retainer agreement between LeBoeuf and its client, JLW.

## II. THE MOTIONS

Third-party defendants moved to dismiss LeBoeuf's third-party complaint or for summary judgment "pursuant to CPLR 3211 and/or CPLR 3212". While the particular statutory basis for the requested relief is neither specified nor discernible from the moving papers and accompanying affidavits, the third-party

answer, attached as an exhibit to the moving papers, asserts that the third-party complaint fails to state a cause of action (CPLR 3211 [a] [7]). LeBoeuf and Johnson opposed the motion and cross-moved for summary judgment or partial summary judgment dismissing the action for malpractice and tortious interference (CPLR 3212).

In a short-form decision, Supreme Court (Richard Lowe, III, J.) denied the third-party defendants' motion to dismiss the defamation and tortious interference claims. However, the court granted LeBoeuf and Johnson's motion to dismiss the malpractice claim, thus departing from the earlier decision of Supreme Court in *Old Republic Ins. Co. v Pariser* (*supra* [Ira Gammerman, J.]), which awarded Old Republic recovery under the funding agreement. The motion court concluded, without elaboration, that the carrier's "consent was expressly given" to JLW's settlement of the *Webb* case and that, in any event, its refusal to accept LeBoeuf's offer to prosecute an appeal from the award of summary judgment operates to preclude this action.

III. SETTLEMENT

■ This Court agrees with the above conclusion drawn by Supreme Court but arrives at the result by means of a different analysis. In particular, the funding agreement cannot be read as expressing Old Republic's consent to settlement of the *Webb* action. To the contrary, the documentary evidence is replete with reservations of the excess insurance carrier's rights, including the right to deny coverage and to recover amounts advanced to JLW for the purpose of funding the *Webb* settlement. At the outset, in a letter dated June 27, 1991 (the June Agreement), Old Republic confirmed to JLW their understanding regarding the defense of the *Webb* action. After reciting the expenses incurred to that point, the letter states, "Based on this information and subject to a full reservation of all of Old Republic's rights (except as expressly limited below), Old Republic hereby exercises its right and opportunity to associate with JLW in the defense and control of the claim and the Litigation". The paragraph containing the limitations states that "Old Republic reserves the right to assert additional grounds for denying or limiting coverage or for seeking reimbursement of any sums expended and JLW reserves its right to contest such reservations." The paragraph makes it clear that the reservation of rights applies to both "legal fees" and "indemnity".

Likewise, the "Funding Agreement", under which Old Republic provided monies for the compromise reached by JLW

with the *Webb* plaintiffs, recites that "Old Republic objects to, and reserves its rights as to, the terms of the settlement agreement." It states:

"Old Republic's payment of the Advance is made solely to allow funding of the settlement and is subject to a complete reservation-of-rights. Neither the making of this Agreement nor any performance pursuant to it shall affect, prejudice or waive any of the rights, positions, claims, or defenses of Old Republic or JLW, or alter or modify the burden of proof on any issue which may arise in coverage litigation. * * *

"JLW acknowledges that the Advance is an interim payment only. Old Republic has advised JLW that it will seek reimbursement for all or some portion of the Advance and all or some portion of amounts expended in defense of the Action pursuant to the June 27, 1991 agreement * * * Nothing in this Agreement shall be construed as precluding Old Republic from seeking such reimbursement or JLW from opposing or challenging Old Republic's right to any purported reimbursement."

The document recites that it is "the product of arm's length negotiation among the parties" and that each "has determined to enter into this Agreement solely on the basis of its own investigation of the matters alluded to herein and the advice of its counsel and not in reliance upon the advice of any other party hereto, or on the basis of any information received from or any statements of any other party hereto."

IV. THE MALPRACTICE CLAIM

The clause in the underlying insurance policy relied upon by the carrier in denying coverage states, in material part, that "liability of the company with respect to any claim shall not attach unless and until * * * the insured's liability shall have been made certain by final judgment after actual trial or by written agreement of the insured, the claimant and the company." In its complaint against its attorneys, JLW alleges: "As of the date of the Funding Agreement, Johnson and LeBoeuf, Lamb failed to advise JLW USA that it was entering into the settlement of the *Webb* action without Old Republic's consent and by doing so, JLW would be in direct breach of its obligations to Old Republic under the Old Republic Policy and the June Agreement. Johnson and LeBoeuf, Lamb further failed to advise JLW USA that by settling the *Webb* action without Old Republic's express, written consent it would lose its right to any coverage under the Old Republic Policy."

JLW contends that the erroneous advice given by LeBoeuf amounts to breach of the standard of professional care expected

of an attorney (*Hart v Carro, Spanbock, Kaster & Cuiffo*, 211 AD2d 617, 619; *Scheller v Martabano*, 177 AD2d 690). In view of the policy requirement that the carrier's consent be obtained and the documentary evidence of the explicit reservation of the carrier's rights under the policy, JLW concludes that counsel's failure to advise it to fulfill this obligation before entering into the settlement with the *Webb* plaintiffs constitutes a departure from the requisite standard of care as a matter of law (*see*, *Shaughnessy v Baron*, 151 AD2d 561, 562; *Logalbo v Plishkin, Rubano & Baum*, 163 AD2d 511, 512-513, *lv dismissed* 77 NY2d 940; *Cicorelli v Capobianco*, 90 AD2d 524, 525, *affd* 59 NY2d 626; *Richmond Hill Hall Corp. v Aiello*, 195 AD2d 452, *lv denied* 82 NY2d 661).

Relying on this Court's decision in *Rodriguez v Fredericks* (213 AD2d 176, *lv denied* 85 NY2d 812), LeBoeuf argues that JLW's failure to appeal from the grant of summary judgment to Old Republic in its suit to recover the amounts advanced to fund the settlement agreement warrants dismissal of JLW's malpractice claim. In *Rodriguez* we noted that, "although there may be cases where * * * representation is so deficient as to compel the nonprevailing party to seek a settlement, this is not such a case" (213 AD2d, *supra*, at 178). However, taking the allegations of the complaint at face value, as we must in the context of a motion to dismiss on the pleadings (*Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146; *Dulberg v Mock*, 1 NY2d 54, 56), counsel's failure to advise an insured to fulfill a condition precedent to recovery under an insurance policy by obtaining the carrier's consent to settlement cannot remotely be regarded as the pursuit of a "thoughtful strategy", as stated in *Rodriguez v Fredericks* (*supra*, at 177). Nor can it be said that counsel's "arguments in support of setting aside the verdict had salience" (*supra*, at 177) because counsel has not made any such argument. Settlement, when compelled by an attorney's breach of the standard of care, does not present an intervening cause so as to bar a malpractice action (*Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy*, 59 AD2d 551, 552-553 [Suozzi, J., concurring], *affd* 45 NY2d 730 *for reasons stated in concurring mem*; *Whitman & Ransom v Revson*, 220 AD2d 321; *Bernstein v Oppenheim & Co.*, 160 AD2d 428).

While acknowledging that the correctness of Supreme Court's decision in *Old Republic Ins. Co. v Pariser* (*supra*) is a "critical element" in the assessment of the malpractice claim, LeBoeuf has failed to indicate any basis upon which the decision might

have been subject to reversal on appeal. Rather, LeBoeuf claims that plaintiff's failure to recite *in haec verba* that it would have prevailed against Old Republic "but for" counsel's negligence renders the complaint deficient as a matter of law. However, as this Court has had occasion to note, "The test on a motion to dismiss for insufficiency of the pleadings is not whether the plaintiff has artfully drafted the complaint but whether, deeming the complaint to allege whatever can be reasonably implied from its statements, a cause of action can be sustained" (*Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46, 48, citing *Feinberg v Bache Halsey Stuart*, 61 AD2d 135, 137-138; *Edwards v Codd*, 59 AD2d 148, 149). In this respect, the complaint is sufficient to withstand the motion to dismiss for failure to state a cause of action.

V. ESTOPPEL

This is not, however, the end of the Court's inquiry. While the judgment obtained by Old Republic against JLW is res judicata and binding on the parties (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500), it has no collateral estoppel effect against LeBoeuf, which was neither a party to that action nor afforded the opportunity to litigate the substantive issues now raised on this appeal (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276, *cert denied* 488 US 1005; *Ryan v New York Tel. Co.*, *supra*, at 500-501). LeBoeuf may therefore avail itself of any defense to the malpractice claim to defeat the contention that, "but for" its asserted negligent representation, JLW would have obtained a favorable outcome in the litigation with its carrier (*Pacesetter Communications Corp. v Solin & Breindel*, 150 AD2d 232, 233-234, *lv dismissed* 74 NY2d 892).

LeBoeuf asserts, disingenuously, that Old Republic should be precluded from maintaining this action under the doctrine of judicial estoppel because it "took—and prevailed upon—the exact opposite position in obtaining the judgment upon which the malpractice claim is based." It argues that because the carrier asserted defenses to coverage in its action against JLW to recover the monies it advanced to fund the settlement, it should be estopped to assert in this action that no other grounds exist that would preclude coverage under the excess insurance policy.

The doctrine of judicial estoppel or the doctrine of inconsistent positions "precludes a party who assumed a certain position in a prior legal proceeding *and who secured a judgment in his or her favor* from assuming a contrary position in another action simply because his or her interests have changed" (*Ford Motor Credit Co. v Colonial Funding Corp.*, 215 AD2d 435, 436

[emphasis added]). As stated by the United States Supreme Court, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position" (*Davis v Wakelee*, 156 US 680, 689). "The doctrine rests upon the principle that a litigant 'should not be permitted * * * to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise'" (*Environmental Concern v Larchwood Constr. Corp.*, 101 AD2d 591, 593, quoting Note, *The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings*, 59 Harv L Rev 1132).

As a matter of statute, a party is permitted to plead inconsistent theories of recovery (CPLR 3014; *Cohn v Lionel Corp.*, 21 NY2d 559, 563). However, summary judgment being the procedural equivalent of a trial, a litigant must elect among inconsistent positions upon seeking expedited disposition (*Unisys Corp. v Hercules Inc.*, 224 AD2d 365, 367, *appeal withdrawn* 89 NY2d 1031; *H.B.L.R., Inc. v Command Broadcast Assocs.*, 156 AD2d 151, 152). It is abundantly clear from the memorandum decision of Justice Gammerman that Old Republic sought and was granted summary judgment on its first two causes of action predicated on JLW's failure to obtain the carrier's consent before entering into the settlement, in violation of both the insurance policy (first cause of action) and the June agreement (second cause of action). LeBoeuf's failure to advise JLW to obtain consent to the proposed settlement is asserted here as the basis for the malpractice claim. Thus, Old Republic's position in this action (asserted on behalf of JLW) is completely consistent with the basis of its recovery in the earlier action (against JLW), and the doctrine of judicial estoppel is inapplicable.

The ability of a party to pursue inconsistent theories of recovery is not without limits. In bringing the malpractice claim as JLW's assignee, Old Republic has implicitly abandoned any and all other defenses it might have raised to coverage under its excess insurance policy. To sustain a cause of action in legal malpractice, JLW must demonstrate that *but for* LeBoeuf's failure to advise JLW it was violating a condition precedent to coverage, the insured would have received indemnification under the insurance policy for its liability to the *Webb* plaintiffs. The assertion that LeBoeuf's negligent omission to advise its client is the singular cause of JLW's lack of coverage necessarily excludes all other grounds upon which

coverage might have been declined. Therefore, for the purpose of assessing the legal malpractice action asserted by Old Republic as assignee of JLW, the only viable defense to coverage is that JLW did not obtain the carrier's consent to compromise the *Webb* plaintiffs' claims.

VI. THE FUNDING AGREEMENT

Supreme Court concluded, without discussion, that Old Republic gave its consent to the settlement between JLW and the *Webb* plaintiffs. The carrier's consent to—or, at least, acquiescence in—the settlement is very much at issue; but the funding agreement, which is unambiguous and therefore subject to interpretation by the court as a matter of law (*General Phoenix Corp. v Cabot*, 300 NY 87, 92; *see also, Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.*, 81 AD2d 168, 180, *lv dismissed* 55 NY2d 602), contains no expression of consent to the compromise.

The absence of ambiguity in the agreement, however, does not serve to render the funding agreement, ipso facto, enforceable or to justify the carrier's treatment of its insured. Inconsistency is inherent in Old Republic's written expression of its legal position on the one hand and the procedural course it ultimately pursued on the other. The carrier provided the funds to pay the *Webb* plaintiffs, thus bringing that action to an end, while simultaneously purporting to reserve the right to dispute its consent to the very compromise it had effectuated.

Ultimately at issue on this appeal is whether, according due consideration to all the attendant circumstances, the carrier can be said to have given its de facto consent to the settlement. Letters from LeBoeuf partner James F. Johnson, IV sent to Grippo & Elden, the carrier's attorneys, and to Chicago Underwriting Group, Inc., its claims administrator, in the months prior to the signing of the funding agreement, provide the context in which settlement with the *Webb* plaintiffs was reached. The letters express concern that a limited opportunity to compromise the case on favorable terms would be lost if not acted upon expeditiously. They reveal the conflict between the carrier's desire to "preserve its funds" by pursuing "its own negotiating strategy" and the desire of LeBoeuf's clients to avoid exposure to liability at trial beyond the plaintiffs' settlement demand of $2.75 million. The letter to Chicago Underwriting Group also reflects LeBoeuf's conviction that settlement for less than $2.1 million is "financially less burdensome than going to trial."

While the stipulation of settlement in the *Webb* action is not contained in the record, Old Republic's complaint against JLW

reveals that the amount advanced to fund the settlement was $1,550,000, substantially less than the $2.75 million originally demanded by the *Webb* plaintiffs. Old Republic sought recovery of this amount from JLW together with the cost of defending the *Webb* action ($928,088) and was granted summary judgment in the amount of $2,478,088 against its insured. Rather than appeal, as urged by LeBoeuf in several letters, JLW entered into an agreement in which it consented to pay Old Republic $1.2 million in three installments of $400,000 each and to assign its malpractice claim against LeBoeuf to the carrier.

It is apparent that the nature of the original dispute has been distorted by the intervening changes in parties and theories of recovery. The underlying controversy centers on the propriety of the settlement reached in the *Webb* action, involving the competing interests of Old Republic and its insured in minimizing exposure to liability in that action. With respect to the proposed settlement, "the insurer's interest in minimizing its payments and * * * the insured's interest in avoiding liability" were in obvious conflict, therefore implicating the insurer's implied duty of good faith in defending and settling claims (*Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 452). The policy provision relied upon by Old Republic states that the obligation of the carrier to indemnify the insured "shall not attach unless and until * * * liability shall have been made certain by final judgment after trial or by written consent of the insured, the claimant and the company." The liability of the insurer under the policy is that " ' "imposed by law." The loss or liability here provided for contemplated the liquidation of a claim, if one were made, by the rendition of a judgment unless the insurance company saw fit to exercise the option which it had to settle and compromise without a trial' " (*Knobloch v Royal Globe Ins. Co.*, 46 AD2d 278, 282 [quoting *Auerbach v Maryland Cas. Co.*, 236 NY 247, 252-253], *revd on other grounds* 38 NY2d 471).

The quoted authority suggests that an insurer, confronted with a demand to settle a claim, can legitimately pursue one of two discrete options consistent with its contractual obligations under the insurance policy (a third option arises upon breach of its obligations under the policy): (1) take the matter to trial, supplying the insured with a defense and providing indemnity, subject to the terms of the policy, against any adverse judgment; (2) compromise the claim, securing a release and putting an end to the litigation as against its insured; or (3) withdraw

from the action, in breach of its obligation to defend, and litigate the question of coverage at a later time (*see, Servidone Constr. Corp. v Security Ins. Co.*, 64 NY2d 419, 423). Old Republic, however, embraced all of the benefits of compromise, thereby limiting its exposure to liability to the amount fixed in the stipulation of settlement and avoiding further litigation expense. Meanwhile, in the funding agreement, the carrier purported to preserve its right to contest its consent to settlement of the *Webb* action.

Old Republic's actions speak considerably louder than the well-crafted verbiage of its written agreements. Significantly, Old Republic nowhere contends that the terms of the settlement are unreasonable (*supra*). Neither the funding agreement nor any other document in the record gives any indication of the basis of the carrier's asserted objection to the settlement. Furthermore, the insurer has implicitly abandoned its defenses to coverage in bringing the instant action. Finally, by accepting the benefits of the settlement (*see, Bradkin v Leverton*, 26 NY2d 192, 197; *Matter of Guttenplan*, 222 AD2d 255, *lv denied* 88 NY2d 812), Old Republic has ratified the compromise agreement. Having availed itself of the benefits of the bargain struck by its insured with the *Webb* claimants, the carrier will not be permitted to evade its contractual obligations to the insured under the terms of its excess insurance policy (*see, Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 266).

VII. PUBLIC POLICY

As the Court of Appeals has observed, the "courts have long favored and encouraged the fashioning of stipulations as a means of expediting and simplifying the resolution of disputes. (*Salesian Soc. v Village of Ellenville*, 41 NY2d 521, 525-526.) We have repeatedly held that, unless public policy is affronted, parties to a civil dispute are free to chart their own litigation course" (*Mitchell v New York Hosp.*, 61 NY2d 208, 214). Apart from any inconsistency between the carrier's actions and its purported objection to settlement is the troubling fact that Old Republic brought suit against its own insured.

It is settled that a carrier may not utilize subrogation to maintain an action against its own insured with respect to a loss covered by the policy of insurance. To condone such a course would permit the carrier to recover from its own insured for the very loss against which the insurance policy provides indemnification, a direct breach of the carrier's primary contractual obligation (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 472).

The antisubrogation rule propounded in *Austin Powder* prohibits an insurer from being "subrogated to a claim against its own insured, at least when the claim arises from an incident for which the insurer's policy covers that insured" (68 NY2d, *supra*, at 471). The Court of Appeals continued, "To allow the insurer's subrogation right to extend beyond third parties and to reach its own insured would permit an insurer, in effect, 'to pass the incidence of the loss * * * from itself to its own insured and thus avoid the coverage which its insured purchased'" (*supra*, at 471, quoting *Home Ins. Co. v Pinski Bros.*, 160 Mont 219, 226, 500 P2d 945, 949). If the public policy underlying the antisubrogation rule prohibits a carrier to pursue a claim against its own insured indirectly, as subrogee, a fortiori, it prohibits the carrier from suing its insured directly on a loss covered by the policy. Having waived all defenses to coverage by bringing the malpractice claim as JLW's assignee, Old Republic is in direct contravention of the public policy interest expressed in the *Austin Powder* case (*supra*). Having acquiesced in the compromise of the *Webb* action, Old Republic should not have been permitted to directly prosecute an action against its own insured for a loss now tacitly conceded to have been covered by the excess insurance policy.

The assignment of the malpractice claim to the carrier offends yet another public policy consideration underlying the antisubrogation rule. In *North Star Reins. Corp. v Continental Ins. Co.* (82 NY2d 281, 296), the Court of Appeals indicated that one of the evils to be avoided is the ability of an insurer to "fashion the litigation so as to minimize its liability under the [insurance policy]". Old Republic appears in the malpractice action not as subrogee but as assignee. By virtue of the agreement struck with its insured, the carrier has transformed a potential liability, involving questions of coverage under its excess liability policy, into a potential for recovery against counsel to its insured. This end has been achieved not only by means of a direct action against the policy holder, but also by means of a subsequent agreement between the carrier and its insured, in which the insured waived appeal from the award of summary judgment in the carrier's favor (which might have obviated any malpractice claim) and assigned to the carrier whatever claim it might possess against its former counsel. It is clear that manipulation of the litigation by the carrier in this matter far exceeds the limited concerns addressed in *Austin Powder* (*supra*) and *North Star* (*supra*), which largely involve the distribution of liability among other insurers whose

policies cover the same loss (*North Star Reins. Corp. v Continental Ins. Co., supra*, at 298 [Simons, J., dissenting]). In this matter, the insurer has contrived to assert a claim against an entity that was not even a party to the action the carrier was obliged to defend.

As previously observed, the funding agreement unambiguously reserves Old Republic's right to contest coverage under its excess liability policy and to recover any amount paid in settlement of the *Webb* action from its insured. But excellence of drafting notwithstanding, there is no question with respect to its unenforceability. As the Court of Appeals succinctly observed in the *Austin Powder* case, "the public interest in assuring integrity of insurers' relations with their insureds and in averting even the potential for conflict of interest in these situations must take precedence over the parties' private contractual arrangements" (68 NY2d, *supra*, at 472). In conclusion, the litigation conducted by Old Republic against JLW to recover the cost of litigation and settlement of the *Webb* action is absolutely barred as against public policy.

VIII. THE PARTIES' CLAIMS

Because it was not a party to the insurer's action against JLW, LeBoeuf is free to raise any defense that might have been available to JLW in that litigation. On the basis of the available defenses, this Court concludes that, as a matter of law, Old Republic should not have been permitted to avoid its obligation to indemnify its insured for liability in connection with the *Webb* action. Therefore, JLW is unable to demonstrate that it sustained any loss as the result of counsel's asserted failure to advise it, and the cause of action for legal malpractice was properly dismissed.

██ The third-party complaint alleging defamation and tortious interference with contractual relations is devoid of merit. Consistent with the courts' favor of the settlement of disputes (*Daniel v Long Is. Univ.*, 184 AD2d 350, 352), settlement discussions are encouraged, as a matter of judicial policy, as a means of resolving litigation in the spirit of compromise, and statements made in the course of settlement negotiations are presumptively privileged (*Caplan v Winslett*, 218 AD2d 148, 152-153; *Grasso v Mathew*, 164 AD2d 476, *lv denied* 78 NY2d 855). As the Court of Appeals stated in *Andrews v Gardiner* (224 NY 440, 445), "counsel are privileged in respect of any statements, oral or written, made in judicial proceedings, and pertinent thereto." Given that the number of cases settled far exceeds the number tried to verdict, settlement discussions

must be regarded as an integral part of the judicial process. Nor is LeBoeuf in any position to argue that the question of its malpractice is not pertinent to this litigation.

In any event, James F. Johnson, IV drafted a letter agreement on behalf of LeBoeuf in connection with a meeting to be held on March 10, 1995 with opposing counsel. It states, "The purpose of this meeting is to endeavor to reach a consensual resolution and settlement of this matter. On behalf of their respective clients, the signatories to this letter agree that all matters discussed at this meeting are without prejudice and cannot be used as evidence in this or any other proceeding." The letter is signed by Mr. Johnson and Philip C. Stahl, the Grippo & Elden partner LeBoeuf accuses of defamation, and it was at the meeting of March 10 that the defamatory remark is alleged to have been uttered. The comment is therefore not only privileged, it is inadmissible by express agreement among counsel.

The cause of action for tortious interference with contractual relations similarly implicates Mr. Stahl's statement at the meeting of March 10 and other assertedly disparaging remarks. In a series of allegations made upon information and belief, the complaint portrays a scheme to pressure JLW to settle the matter on terms favorable to the insurer and to misappropriate LeBoeuf's retainer for the benefit of Grippo & Elden. The context of the litigation in which the remarks were made cannot be ignored. Furthermore, as the Appellate Division, Second Department, has observed, "The plaintiffs' mere contentions that third parties cancelled contracts with them because of the alleged defamatory remarks * * * offered with no factual basis to support the allegations, [is] insufficient to state a cause of action for tortious interference with contractual relations" (*M.J. & K. Co. v Matthew Bender & Co.*, 220 AD2d 488, 490, citing *Coughlin v Neefus*, 153 AD2d 78, 81; *Fitzpatrick Constr. Corp. v County of Suffolk*, 138 AD2d 446, 449, *lv denied and dismissed* 73 NY2d 807).

Accordingly, the order of the Supreme Court, New York County (Richard Lowe, III, J.), entered April 16, 1997, which denied third-party defendants' motion for summary judgment dismissing the third-party complaint charging defamation and tortious interference with contractual relations, and which granted defendants' cross motion for summary judgment dismissing the complaint alleging legal malpractice, should be modified, on the law, to the extent of granting third-party defendants' motion and dismissing the third-party complaint

and, except as so modified, affirmed, without costs. Appeal from order, same court and Justice, entered July 17, 1996, which denied the motion of out-of-State attorneys to be admitted pro hac vice to represent plaintiffs in the malpractice action, should be dismissed, without costs, as academic. The Clerk is directed to enter judgment in favor of third-party defendants dismissing the third-party complaint.

MILONAS, J. P., ROSENBERGER and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered April 16, 1997, modified, on the law, to the extent of granting third-party defendants' motion to dismiss the third-party complaint charging defamation and tortious interference with contractual relations and, except as so modified, affirmed, without costs, and the appeal from the order, same court and Justice, entered July 17, 1996, dismissed, without costs, as academic.