■ WELLS FARGO BANK NATIONAL ASSOCIATION et al., Respondents, v WEBSTER BUSINESS CREDIT CORPORATION, Appellant. [979 NYS2d 298]—

In this action between lenders to a single borrower, plaintiffs seek to recover damages they allegedly sustained as a result of, among other things, the borrower's inability to pay amounts due under a credit agreement that provided the borrower with a loan and a revolving credit facility. In August 2007, plaintiffs and defendant, collectively as lenders, entered into a credit agreement with the borrower. The credit agreement not only defined the scope of the lenders' indemnification duties to each other, but also gave plaintiffs the power to appoint defendant, who was a nonsignatory to the credit agreement, as the syndication and administrative agent for the credit facility. As agent, defendant's duties included disbursing advances and receiving repayment of advances from the borrower. Further, the credit agreement designated defendant to serve as the issuer of letters of credit to the borrower. Plaintiff and defendant loaned the borrower around $65 million between August 2007 and March 2009.

In February 2009, the borrower's chief financial officer admitted that he had significantly overstated the company's eligible receivables and inventory. Plaintiffs commenced this action in May 2009, alleging, among other things, that defendant had intentionally failed to disclose material information about the borrower's financial condition and had induced plaintiffs to continue advancing funds to the borrower, even after defendant knew or should have known about the borrower's fraud. Plaintiffs ultimately served an amended complaint asserting a claim for contractual indemnification, including attorneys' fees, under section 15.7 of the credit agreement. For its part, defendant asserted several counterclaims, including one for indemnification under sections 15.7 and 17.7 of the credit agreement, which define the scope of the borrower's indemnification obligations.

Plaintiffs moved for summary judgment dismissing defendant's counterclaims and defendant moved for summary judgment dismissing plaintiffs' amended complaint. The IAS court eventually granted defendant's motion for summary judgment and dismissed the complaint in December 2011, including plaintiffs' indemnification claim.* In response to plaintiffs' motion for summary judgment on defendant's counterclaims, defendant agreed to discontinue, with prejudice, each of its

---

* Although plaintiffs filed a notice of appeal from that order, they never perfected that appeal.

counterclaims against plaintiffs, with the exception of its claim for contractual indemnification.

Plaintiffs then moved for summary judgment dismissing defendant's sole remaining counterclaim for contractual indemnification; defendant cross-moved for partial summary judgment on the issue of plaintiffs' obligation as lenders to indemnify and reimburse defendant for its reasonable attorneys' fees and disbursements in this action.

Sections 15.7 and 17.7 of the credit agreement provide: "17.7. Indemnity. Each Borrower shall indemnify Agent, each Lender, [and] each other Lender Party . . . from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, reasonable fees and disbursements of counsel) which may be imposed on, incurred by, or asserted against Agent, or any Lender or any other Lender Party in any litigation, proceeding or investigation instituted or conducted by any governmental agency or instrumentality or any other Person with respect to any aspect of, or any transaction contemplated by, or referred to in, or any matter related to, this Agreement or the Other Documents, whether or not Agent, any Lender or any other Lender Party is a party thereto, except to the extent that any of the foregoing arises out of the willful misconduct or gross negligence of the party being indemnified."

"15.7. Indemnification. To the extent Agent is not reimbursed and indemnified by Borrowers, each Lender will reimburse and indemnify Agent, each Issuer, and each Lender Party in proportion to its respective portion of the Advances (or, if no Advances are outstanding, according to its Commitment Percentage), from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on, incurred by or asserted against Agent, such Issuer and such Lender in performing its duties hereunder, or in any way relating to or arising out of this Agreement or any Other Document; provided, however, that, Lenders shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the indemnified party's gross (not mere) negligence or willful misconduct."

Defendant contends that section 17.7 must be read together with section 15.7. However, on its face, section 17.7 expressly contemplates third-party litigation against the lenders, including "any governmental agency or instrumentality or any other

Person" without "clearly impl[ying]" that the parties intended the provision to provide for indemnification in litigation against each other (*Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491-492 [1989]). This provision is fatal to defendant's claim of inter-party indemnification for attorneys' fees (*see id.*; *Gotham Partners, L.P. v High Riv. Ltd. Partnership*, 76 AD3d 203, 206 [1st Dept 2010], *lv denied* 17 NY3d 713 [2011]).

Even standing alone, section 15.7 does not evince an "unmistakably clear" intention to waive the American Rule against prevailing parties' recovery of attorneys' fees, because it contemplates third-party claims against the lenders, who include defendant (*see Hooper*, 74 NY2d at 492).

Contrary to defendant's argument, plaintiffs' previous assertion of their own claim for contractual indemnification does not judicially estop them from denying that defendant is entitled to indemnification of attorneys' fees under the agreement. The doctrine of judicial estoppel " 'precludes a party who assumed a certain position in a prior legal proceeding *and who secured a judgment in his or her favor* from assuming a contrary position in another action simply because his or her interests have changed' " (*Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae*, 243 AD2d 168, 176 [1st Dept 1998], *lv dismissed* 92 NY2d 962 [1998], quoting *Ford Motor Credit Co. v Colonial Funding Corp.*, 215 AD2d 435, 436 [2d Dept 1995]). As plaintiffs did not prevail on their contractual indemnification claim, the doctrine of judicial estoppel does not apply (*see Kvest LLC v Cohen*, 86 AD3d 481, 482 [1st Dept 2011]; *Gale P. Elston, P.C. v Dubois*, 18 AD3d 301, 303 [1st Dept 2005]).

Nor does plaintiffs' prior claim for contractual indemnification, standing alone, constitute a "judicial admission" that attorneys' fees are recoverable in inter-party disputes. On the contrary, plaintiffs' former construction of the agreement was a legal argument, and not a "fact" amenable to treatment as a "formal judicial admission" (*GJF Constr., Inc. v Sirius Am. Ins. Co.*, 89 AD3d 622, 626 [1st Dept 2011]).

We have considered defendant's remaining arguments and find them unavailing. Concur—Tom, J.P., Friedman, Acosta, Moskowitz and Gische, JJ.