[692 NYS2d 5]

Ansonia Associates Limited Partnership, Respondent, v Public Service Mutual Insurance Company et al., Appellants.

First Department, May 25, 1999

## APPEARANCES OF COUNSEL

*Dean G. Yuzek* of counsel (*Leigh A. Roveda* on the brief; *Hutton Ingram Yuzek Gainen Carroll & Bertolotti, L. L. P.,* attorneys), for respondent.

*Kathleen E. Schaaf* of counsel (*Andrew J. Harakas* and *Steven H. Weisman* on the brief; *Rosenman & Colin, L. L. P.,* and *Stuart M. Herz,* attorneys), for Public Service Mutual Insurance Company, appellant.

*Judith F. Goodman* of counsel (*Lester Chanin* on the brief; *Goodman & Jacobs,* attorneys), for Federal Insurance Company, appellant.

## OPINION OF THE COURT

RUBIN, J.

This case raises questions of public policy, as defendant insurance companies contend. But the prohibition against reimbursement for punitive damages, upon which they rely, is not one of the policy considerations implicated (*Home Ins. Co. v American Home Prods. Corp.*, 75 NY2d 196, 200).

Defendant Public Service Mutual Insurance Company issued a general commercial liability insurance policy in the amount of $1 million to plaintiff Ansonia Associates. Defendant Federal Insurance Company, the excess liability carrier, issued coverage in the amount of $20 million. The issue presented by this appeal is whether defendants (collectively, the insurer) refused in bad faith to compromise a claim within the limits of the available coverage so as to require that restitution be made in the amount the insured paid to settle the claim against it. As no exemplary damages have been awarded, plaintiff cannot and does not seek reimbursement for any sum that represents punitive damages, and the public policy bar of *Home Ins. Co. v*

*American Home Prods. Corp. (supra)* is simply inapplicable (*see, Soto v State Farm Ins. Co.*, 83 NY2d 718).

Defendants employ backwards logic in the attempt to avoid liability for breach of the insurer's duty to exercise good faith in defending the insured. The reasoning advanced by defendant Public Service Mutual Insurance Company, in which defendant Federal Insurance Company concurs, would enable the insurer " 'to pass the incidence of the loss * * * from itself to its own insured and thus avoid the coverage which its insured purchased' " (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 471, quoting *Home Ins. Co. v Pinski Bros.*, 160 Mont 219, 226, 500 P2d 945, 949). The gravamen of the insurer's position is that because the amount representing an award of punitive damages cannot be recovered from the insurer on public policy grounds, the insurer cannot be guilty of bad faith by exposing the insured to punitive damages, even though the potential exemplary award might far exceed any potential liability for compensatory damages.

I am aware of no policy of this State that would require or even support such a conclusion. To the contrary, there is a well-established proscription against permitting an insurer to place its own financial interests above those of its insured (*e.g.*, *Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra*, at 472 [subrogation claim against own insured]; *Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae*, 243 AD2d 168, *lv dismissed* 92 NY2d 962 [direct action against own insured]).

The insurer's obligation to provide its insured with a defense is broader than its duty to indemnify the insured for loss (*Goldberg v Lumber Mut. Cas. Ins. Co.*, 297 NY 148, 154). "The New York rule is that where an insurer ' "unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured party's claim, and is then entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlements made without the insurer's consent" ' " (*Rosen & Sons v Security Mut. Ins. Co.*, 31 NY2d 342, 347, quoting *Matter of Empire State Sur. Co.*, 214 NY 553, 563). *Rosen* (*supra*, at 347) emphasizes that "the insurer's obligation to act in good faith for the insured's interests may be breached in other ways than by refusing or neglecting to defend a suit. It may be breached by neglect and failure to act protectively when the insured is compelled to make settlement at his peril; and unreasonable delay by the insurer, in dealing with a claim, may be one form of refusal to perform which could justify settlement by the insured."

In *Public Serv. Mut. Ins. Co. v Goldfarb* (53 NY2d 392), the Court of Appeals merely held (at 401) that the insured could not compel his insurance carrier to *indemnify* him "for any liability for punitive damages", and went on to stress (at 401) that "it must, nonetheless, defend him * * * because a claim within the stated coverage has been made." The Court also alluded to the conflict of interest that arises where the insurer is "liable only upon some of the grounds for recovery asserted and not upon others" (at 401).

This matter likewise involves the insurer in a conflict of interest. In the absence of liability for punitive damages, defendant insurance companies face no augmented financial risk by foregoing settlement and proceeding to trial. The insured, in marked contrast, is forced to elect between exposure to potentially ruinous punitive damages by proceeding to trial and the loss of coverage for compensatory damages by entering into a compromise without the insurer's consent. In this situation, the insurer's use of the threat of punitive damages, which may exceed compensatory damages by a substantial margin (*see, BMW of N. Am. v Gore*, 517 US 559, 581 [suggesting 10 to 1 as an outside ratio]), amounts to the application of economic duress (*see, 805 Third Ave. Co. v M. W. Realty Assocs.*, 58 NY2d 447, 451; *Austin Inst. v Loral Corp.*, 29 NY2d 124, 130; *989 Sixth Ave. Assocs. v Stolow*, 176 AD2d 556).

The operative question to be decided on this appeal is whether the complaint states a prima facie case of bad-faith refusal to settle an action on the part of the insurer. Plaintiff's cause of action arises out of "the principle that in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing" (*Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87; *see also, Brassil v Maryland Cas. Co.*, 210 NY 235). The Court of Appeals has noted that "whenever an insurer is presented with a settlement offer within policy limits a conflict arises between, on the one hand, the insurer's interest in minimizing its payments and on the other hand, the insured's interest in avoiding liability beyond the policy limits" (*Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 452, citing *Brown v United States Fid. & Guar. Co.*, 314 F2d 675, 678 [2d Cir]). *Pavia* states that, where settlement is rejected, the essence of a charge of bad faith against the insurer is having " 'advanced its own interests by compromis-

ing those of its insured' " (*supra,* at 452, quoting *Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427, 446 [Breitel, J., dissenting]). As the *Pavia* Court explained, "At the root of the 'bad faith' doctrine is the fact that insurers typically exercise complete control over the settlement and defense of claims against their insureds, and, thus, under established agency principles may fairly be required to act in the insured's best interests" (*supra,* at 452-453, citing 7C Appleman, Insurance Law and Practice § 4711 [Berdal ed]). The Court went on to hold (at 453) that: "in order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer (*see, Lozier v Auto Owners Ins. Co.*, 951 F2d 251 [9th Cir]). In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted."

That the "large judgment" for which the "insured would be held personally accountable" might consist of an award of punitive damages does not detract from the insurer's complicity in exposing the insured to significant financial loss. Defendant does not pretend that *Goldfarb* has been overruled so as to relieve an insurer of the duty to fairly represent an insured's interests simply because the insured is potentially liable for punitive damages (*Magnum Foods v Continental Cas. Co.*, 36 F3d 1491, 1506 [10th Cir]), and this Court will not endorse such a proposition. The interest of the judicial system in promoting the settlement of disputes (*Salesian Socy. v Village of Ellenville*, 41 NY2d 521, 525-526) is not advanced by permitting an insurer to derive a benefit from its steadfast refusal to consider a compromise.

Whether or not an insurer's cavalier indifference to its insured's exposure to potentially ruinous punitive damages, without more, constitutes bad faith, forcing the insured to sacrifice the very coverage it paid for in order to avoid a possible award of exemplary damages involves the carrier in a clear conflict of interest. As this Court has previously noted, "In *North Star Reins. Corp. v Continental Ins. Co.* (82 NY2d 281, 296), the Court of Appeals indicated that one of the evils to be avoided is the ability of an insurer to 'fashion the litigation so

as to minimize its liability under the [insurance policy]' " (*Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae, supra,* at 181).

On a motion for summary judgment attacking the sufficiency of the complaint (CPLR 3211 [a] [7]; *Sanders v Winship,* 57 NY2d 391, 394), the facts are construed in a light most favorable to the party opposing the motion, which is entitled to all reasonable inferences that can be derived therefrom (*Arrington v New York Times Co.,* 55 NY2d 433, 442, *cert denied* 459 US 1146; *Dulberg v Mock,* 1 NY2d 54, 56). In any event, for the purposes of this motion, defendants have conceded the material allegations of the complaint.

The record contains evidence from which a jury might readily conclude that, prior to trial, defendant insurer was presented with a settlement offer, well within the limits of the policy, under which plaintiff's proposed contribution was $375,000. Its own counsel urged it to accept the offer, stating, "It is my recommendation that at this juncture active efforts on our part to resolve this matter be undertaken to minimize the exposure to runaway verdicts, punitive damages, or a disproportionate liability split in which Public Service Mutual's contribution towards the settlement would be greater than [this amount]". The insurer did not act upon the recommendation. Subsequently, on October 11, 1996, the 10 codefendants settled for the total sum of $152,702. Counsel again urged settlement, stating his "opinion that resolutions [*sic*] of these actions, and the extinguishment of any liability of the insured including the possible effect of punitive damages is preferred to the prospect [of] subjecting the insured to a trial on the issue of liability and damages where the exposure appears greater than the benefits of resolution." The insurer again ignored the suggestion. A trial was then conducted on the issue of liability. The jury returned a verdict that apportioned fault among all of the original defendants (*see, Matter of New York City Asbestos Litig.,* 188 AD2d 214, 221, *affd* 82 NY2d 821 *for reasons stated below),* finding plaintiff herein to be 80% liable for the injury and to be answerable in punitive damages for "gross negligence and/or willful misconduct". Plaintiff offered its own funds in the attempt to settle the matter for $500,000 above the amount of the $1 million policy issued by defendant Public Service Mutual, but the plaintiffs demanded $2.5 million. On June 26, 1997, the case was ultimately settled for $1.5 million, the entire amount being provided by plaintiff herein upon defendants' refusal to make any contribution towards the settlement.

Under these circumstances, a trier of fact could certainly conclude that the intransigence of the insurer deprived plaintiff of a legitimate opportunity to compromise the action within the limits of the available coverage at a point when there remained no doubt as to liability (*Pavia v State Farm Mut. Auto. Ins. Co.*, *supra*, at 454).

The insurer does not argue that the amount of the settlement was unreasonable (*see, Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae*, *supra*, at 180). As plaintiff was left as the "target defendant" in the action, the $1.5 million it paid to compromise the claim against it is not unrealistic. Nor is it grossly disproportionate to the sum which the other parties defendant (a large number of whom were uninsured) paid in settlement prior to the start of trial.

The record further contains evidence from which a jury might conclude that the insurer's rejection of all offers to settle the claim against the insured was part of a deliberate strategy to avoid payment on the claim. The evidence is contained in a letter from counsel retained by defendant Public Service Mutual dated October 11, 1996, addressed to its vice president. Underneath a passage in which counsel notes that, with respect to punitive damages, "exposure to the insured exists", the letter has been annotated, "Let the insd settle. Law is settled—Do not pay liab to avoid punitive." While somewhat cryptic, the comment reflects the carrier's intent to force its insured to settle (on its own) by refraining from payment of compensatory damages (liability), thus leaving the insured exposed to a punitive damages award.

In its defense, the insurer relies on the Court of Appeals' language in *Soto v State Farm Ins. Co.* (83 NY2d, *supra*, at 725): "Regardless of how egregious the insurer's conduct has been, the fact remains that any award of punitive damages that might ensue is still directly attributable to the insured's immoral and blameworthy behavior." The Court went on to state that "being released from exposure to liability for punitive damages * * * is certainly not a *right* whose loss need be made subject to compensation when a favorable pretrial settlement offer has been wasted by a reckless or faithless insurer." (*Supra*, at 725.) The insurer's position is that even conceding "reckless or faithless" conduct, for the purposes of this motion, no liability can result from exposing the insured to punitive damages. What the insurer overlooks is that the Court of Appeals' remarks are addressed to the situation in which exemplary damages have been assessed as the result of the

insurer's failure to compromise, and the insured is seeking to recoup the amount representing the award of punitive damages from the carrier. As stated in *Soto* (at 724), the public policy against recoupment of punitive damages from an insurer derives from the " ' "fundamental principle that no one shall be permitted to take advantage of his own wrong" ' " (quoting *Hartford Acc. & Indem. Co. v Village of Hempstead*, 48 NY2d 218, 226, quoting *Messersmith v American Fid. Co.*, 232 NY 161, 165). The Court noted, "This principle is not vitiated by the existence of an entirely separate and analytically distinct wrong on the part of the insurer" (*Soto v State Farm Ins. Co., supra*, at 724).

Stated simply, two wrongs do not make a right. What defendants misapprehend is that, for the purposes of this appeal, there is only one wrong and it is entirely attributable to misconduct by the insurer. Having succeeded in maneuvering its insured into unilaterally entering into a settlement to avoid the *potential* of an award of punitive damages, the insurer has exhibited bad faith by using economic duress to deprive the insured of the very insurance coverage for which plaintiff contracted. The insurer cannot justify its misconduct by speculating that, had the parties proceeded to trial, an award of exemplary damages would have been rendered that would necessarily have been upheld by this Court. In the absence of any award representing exemplary damages, this Court is not concerned with "preserving the condemnatory and retributive character" of such awards and avoiding a result that "would allow the insured wrongdoer to divert the economic punishment to an insurer" (*Soto v State Farm Ins. Co., supra*, at 724). What is involved here is merely that aspect of our civil justice system that "allow[s] a wrongdoer to escape the punitive consequences of his own malfeasance in order that the injured plaintiff may enjoy the advantages of a swift and certain pretrial settlement" (*Soto v State Farm Ins. Co., supra*, at 725). It is "no more than a necessary incident of the process" (*supra,* at 725), and not an event that operates to absolve the insurer of the consequences of its failure to fairly represent its insured's interests in the litigation, looking instead to its own financial benefit. Thus, the defect in defendants' case is the lack of "an entirely separate and analytically distinct wrong on the part of the insure[d]", to paraphrase *Soto* (*supra*, at 724). Succinctly stated, while two wrongs do not make a right, one wrong remains just that.

Accordingly, the order of the Supreme Court, New York County (Franklin Weissberg, J.), entered September 18, 1998,

which denied defendants' motions for summary judgment dismissing the complaint, should be affirmed, with costs.

ROSENBERGER, J. P., WALLACH and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered September 18, 1998, affirmed, with costs.