[847 NYS2d 49]

BANC OF AMERICA SECURITIES LLC, Respondent, v SOLOW BUILD-
ING COMPANY II, L.L.C., Appellant, et al., Defendant.

First Department, December 4, 2007

## APPEARANCES OF COUNSEL

*Dewey Pegno & Kramarsky, LLP*, New York City (*Thomas E. L. Dewey* of counsel), *Boies, Schiller & Flexner LLP*, Armonk (*Philip C. Korologos* of counsel), and *Dreier, LLP*, New York City (*Marc S. Dreier* of counsel), for appellant.

*Davis Polk & Wardwell*, New York City (*Robert F. Wise, Jr., Neal A. Potischman* and *Ross Galin* of counsel), for respondent.

## OPINION OF THE COURT

Tom, J.

In 1996, defendant Solow Building Company leased 60,000 square feet of space in its building located at 9 West 57th Street in Manhattan to Montgomery Securities, plaintiff's predecessor in interest. The leasehold was eventually expanded to encompass more than 640,000 square feet of space on 20 floors, which plaintiff Banc of America Securities (BAS) utilizes as its New York headquarters. The lease requires BAS to obtain Solow's consent before undertaking any alterations. It imposes an affirmative reciprocal obligation on Solow "not to unreasonably withhold its consent" to proposed, nonstructural changes required to render the space amenable to the lessee's business purposes. It further provides that Solow will approve or disapprove proposed alteration plans within 10 business days and that, upon substantial completion of the work, it may recover its "actual out-of-pocket expenses reasonably incurred in connection with such Alterations."

In a letter dated December 17, 2001, Sheldon H. Solow personally wrote to Roy Berger of BAS to demand reimbursement, "not limited to overhead, administrative costs and other similar costs," for the landlord's review of plans and specifications submitted by BAS in connection with proposed alterations. Without reference to any lease provision, Sheldon Solow asserted that a fee equal to 3% of BAS's overall costs for the renovation work would be appropriate and, in December 2002, the tenant began receiving written demands for payment of $6 million alleged to be owed to Solow for its review of previously submitted renovation proposals. In December 2003, Solow advised BAS that its failure to pay such invoices "is a default under the Lease and we do not have an obligation to review any further plans."

On March 10, 2004, BAS was served with a default notice based on its failure to meet Solow's $6 million demand. Between March 11th and March 16th, BAS was served with four more notices of default, one for each business day. As a result, on March 19, 2004, BAS commenced the instant action seeking declaratory relief that the notices of default were null and void and that it was not obligated to make the demanded payment. BAS noted that, under the lease, it was responsible for paying only Solow's actual out-of-pocket expenses incurred in reviewing the alteration proposals and "was not obligated to pay Solow the purported $6 million 'Fee.'" BAS urged that if the notices of default were not declared null and void, it would be irreparably harmed inasmuch as its principal place of business is located in the leased space and it has already invested some $215 million in alterations to the premises since 1996 to satisfy its business needs, including the construction of a new trading floor. BAS also sought a permanent injunction prohibiting Solow from terminating the lease and simultaneously sought a *Yellowstone* injunction tolling the time to cure any default. The application was ultimately withdrawn pursuant to a stipulation between the parties.

Thereafter, on May 21, 2004, BAS amended its complaint to assert six causes of action. The fourth cause of action of the amended complaint, which is the only cause of action at issue on this appeal, alleges that, as a result of this dispute, Solow has failed to respond to more than 14 alteration proposals submitted by BAS since early 2003. Consequential damages sustained as a result of the delay in performing necessary alteration work are alleged to include lost business income, loss of use of the premises and additional expenses due to the firm's inability to implement the required changes in the leased space.

Following joinder, Solow moved for partial summary judgment dismissing the fourth cause of action on the ground that the remedy for its refusal to consent to proposed alterations is expressly limited to specific performance under the lease. Article 35 (E) provides, in material part:

> "Tenant hereby waives any claim against Landlord which Tenant may have based upon any assertion that Landlord has unreasonably withheld or unreasonably delayed any consent requested by Tenant, and Tenant agrees that its sole remedy shall be an action or proceeding to enforce any related provision or for specific performance, injunction or declaratory judgment or an arbitration proceeding."

In opposition, BAS argued that this limitation clause is unenforceable because Solow's refusal to timely review and approve proposed alterations, as required under the lease, constitutes malice and bad faith. BAS charged that Solow withheld approval "for purely ulterior motives, to force BAS to agree, among other things, to unwarranted demands in the millions of dollars for payments not called for under the lease." It contended that defendant's objective in "extracting unwarranted payments" amounts to extortion.

In deciding the motion, Supreme Court noted the absence of any lease provision that might entitle Solow to recover a 3% fee for reviewing the firm's alteration proposals and the absence of evidence tending to demonstrate that Solow's actual out-of-pocket expenditures for reviewing the alteration plans approached the $6 million it claimed was owed by BAS. Thus, the court concluded, "If Solow cannot prove that the review fee is justified, the trier of fact could reasonably conclude that Solow's actions *were* extortionary [*sic*]" (2005 NY Slip Op 30143[U], *7). The court held that until a determination is made on this issue, summary judgment dismissing the fourth cause of action is inappropriate.

On appeal, Solow argues that the complaint fails to assert "any tort theory of recovery" or to allege that Solow acted with willfulness or malice in failing to timely approve or disapprove the proposed alteration plans. Relying on this Court's ruling in *Metropolitan Life Ins. Co. v Noble Lowndes Intl.* (192 AD2d 83, 87-88 [1993], *affd* 84 NY2d 430 [1994]), Solow concludes that BAS has alleged no more than a breach of contract, for which redress is limited to specific performance under the terms of the lease.

The test on a motion directed at the sufficiency of the complaint is not whether a cause of action is artfully drafted but whether, accepting the allegations of the complaint as true and according them the benefit of every favorable inference, a legally cognizable cause of action is made out (*see Rovello v Orofino Realty Co.*, 40 NY2d 633, 634 [1976]; *P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 375-376 [2003]; *Hirschhorn v Hirschhorn*, 194 AD2d 768, 768 [1993]). The amended complaint avers that Solow's demands for payment of a fee of $6 million coincided with its failure to approve some 14 different alterations to the leased premises, resulting in pecuniary loss to BAS. That the complaint does not use the words "malice" and "willful" is not material. "The law

has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal" (*Wood v Duff-Gordon*, 222 NY 88, 91 [1917]). The allegations of the complaint suffice to raise the issue of defendant's resort to coercion to derive a benefit not bestowed by the parties' agreement (*see Ansonia Assoc. Ltd. Partnership v Public Serv. Mut. Ins. Co.*, 257 AD2d 84, 87 [1999] [insurer's bad-faith refusal to settle]; *Friends Lbr. v Cornell Dev. Corp.*, 243 AD2d 886, 888 [1997] ["The existence of economic duress is demonstrated by proof that one party to a contract has threatened to breach the contract by withholding performance unless the other party agrees to some further demand"]; *see also 805 Third Ave. Co. v M.W. Realty Assoc.*, 58 NY2d 447, 451 [1983]; *Austin Instrument v Loral Corp.*, 29 NY2d 124, 130 [1971]).

The amended complaint demonstrates that BAS set forth the events supporting its claim that Solow willfully and unjustifiably withheld performance under the lease. BAS sufficiently detailed the essential facts, demonstrating a pattern of refusal by Solow to either approve or disapprove the proposed alterations while at the same time demanding payment of $6 million, a demand unsupported by reference to any lease provision. According the allegations of the complaint, as supplemented by BAS's submissions, "their most favorable intendment" (*Arrington v New York Times Co.*, 55 NY2d 433, 442 [1982], *cert denied* 459 US 1146 [1983]; *Dulberg v Mock*, 1 NY2d 54, 56 [1956]), BAS has adequately asserted that Solow's withholding of performance was willful, malicious or in bad faith, and the failure to employ those precise terms in the pleadings is not fatal to its cause of action.

Where a contract is straightforward and unambiguous, its interpretation presents a question of law for the court, to be determined without resort to extrinsic evidence (*West, Weir & Bartel v Mary Carter Paint Co.*, 25 NY2d 535, 540 [1969]). Thus, where the application of a contract provision is disputed, the issue is normally resolved by reference to the contract itself (*Slamow v Del Col*, 79 NY2d 1016, 1018 [1992], *affg on mem below* 174 AD2d 725 [1991]). In addition, it is unnecessary for a party to a contract dispute to raise the issue of good faith. The duty of good faith and fair dealing is implicit in the performance of contractual obligations (*see Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995]; *Ansonia Assoc.*, 257 AD2d at 87; *cf. Ting Kou Cheng v Brewran Vil. Hudson Assoc.*, 180 AD2d 519, 521 [1992]) to the extent that a separately stated

cause of action asserting breach of that duty is routinely dismissed as redundant (*e.g. Levi v Utica First Ins. Co.*, 12 AD3d 256, 257-258 [2004]; *McMahan & Co. v Bass*, 250 AD2d 460, 462 [1998], *lv denied, lv dismissed* 92 NY2d 1013 [1998]).

The amended complaint's allegation of refusing to approve renovation plans in the attempt to extract a $6 million payment from BAS clearly implicates Solow's bad faith nonperformance of its obligations under the lease (*see Ansonia Assoc.*, 257 AD2d at 91; *Abax Inc. v New York City Hous. Auth.*, 282 AD2d 372, 373 [2001]). In such circumstances, an obligation of good faith and fair dealing is appropriately implied "and, if implied will be enforced" (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 304 [1983]). The compulsion demonstrated by Solow's threat to withhold performance until payment is forthcoming, even without any explicit assertion that Solow acted willfully or with malice, warrants examination of its performance of its lease obligations.

The basis of Solow's motion to dismiss the cause of action for consequential damages is a defense founded upon documentary evidence, specifically, the lease provision limiting the tenant's remedy to specific performance for loss occasioned by delay in the approval of alterations (CPLR 3211 [a] [1], [7]). The common business practice of limiting liability by restricting or barring recovery by means of an exculpatory provision, "although disfavored by the law and closely scrutinized by the courts" (*Lago v Krollage*, 78 NY2d 95, 99 [1991]), is accorded judicial recognition where it does not offend public policy (*id.* at 99-100); however, that policy does not extend to acts that are either "willful or grossly negligent" (*id.* at 100; *Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377, 384-385 [1983]; *see Graphic Scanning Corp. v Citibank*, 116 AD2d 22, 26 [1986]). Enforcement of such a provision is precluded when "the misconduct for which it would grant immunity smacks of intentional wrongdoing" (*Kalisch-Jarcho*, 58 NY2d at 385; *see also Sommer v Federal Signal Corp.*, 79 NY2d 540, 554 [1992] [gross negligence]), where it is willful (*see Merrill Lynch, Pierce, Fenner & Smith, Inc. v Wise Metals Group, LLC*, 19 AD3d 273, 274 [2005] [fraudulent inducement]), "as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens reckless indifference to the rights of others" (*Kalisch-Jarcho*, 58 NY2d at 385).

The affidavit of F. William Miles, senior vice-president of Banc of America for New York City corporate real estate, alleges that

"BAS has invested approximately $215 million in substantial tenant improvements to the Premises" and would be "irreparably injured" by the loss of its "valuable interest in the Lease and its substantial improvements." It is well settled that a commercial lease represents a "valuable property interest" for which equitable protection is available "on less than the normal showing required for preliminary injunctive relief" (*Lexington Ave. & 42nd St. Corp. v 380 Lexchamp Operating*, 205 AD2d 421, 423 [1994]). Thus, the complaint, as supplemented by this affidavit, establishes, prima facie, that Solow's bad faith misconduct in deliberately withholding approval of proposed alterations unless BAS agreed to make a further $6 million payment exposed the tenant to the loss of a valuable property interest.

Contrary to Solow's contentions with respect to specificity of pleadings, there is no requirement that a complaint anticipate and overcome every defense that might be raised in opposition to a cause of action (*see Metropolitan Life Ins. Co. of City of N.Y. v Meeker*, 85 NY 614, 614 [1881]). In the context of this dispute, BAS was not required to anticipate that Solow would assert the lease's limitation on recovery in defense to the fourth cause of action; thus, there was no need for the complaint to allege that Solow acted with malice or in bad faith to avoid the contractual limitation barring monetary damages. The contention that BAS waived its right to recover monetary damages under the limitation on recovery provision is an affirmative defense (*see Ash v New York Univ. Dental Ctr.*, 164 AD2d 366, 368 [1990]),[1] and an agreement proposing to insulate a party from the consequences of its own misconduct is "subjected to close judicial scrutiny" (*id.*, citing *Gross v Sweet*, 49 NY2d 102 [1979]).

Solow had the burden to establish by competent evidence that there is no factual issue barring the grant of summary judgment in its favor (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Significantly, Solow has not attempted to demonstrate that it acted in good faith and in accordance with the lease by proffering evidence that $6 million represents the reasonable cost of reviewing plaintiff's alteration plans or that its tenant's refusal to make such payment constitutes a substantial violation of the lease so as to justify the issuance of a notice of default. Thus, Supreme Court properly concluded

---

**1.** Solow did not expressly raise the limitation of remedies provision in answer to the complaint or in a pre-answer motion to dismiss (CPLR 3211 [e]; 3018 [b]).

that issues of fact with respect to whether Solow acted maliciously or in bad faith preclude summary disposition.

The dissenters' analysis is illogical, contrary to law and predicated upon unwarranted findings of fact. While perceiving no "plausible support in the text of the lease" for the imposition of the "review fee" sought by defendant, they nevertheless conclude that plaintiff has not been subjected to "economic duress." This position is necessarily predicated on a finding that Solow's demand for $6 million to approve the proposed renovations "is not likely to have intimidated a sophisticated party like BAS," and upon speculation that "a demand so unsupported by the lease would instill derision rather than fear." Relying on the Court of Appeals' affirmance in *Noble Lowndes Intl.* (84 NY2d at 439), they hold that because Solow was motivated by economic self-interest, it is entitled to hide behind the limitation of remedies clause and that, in any event, "BAS wholly failed to show the inadequacy of the very remedies it agreed to in the lease."

It should be unnecessary to state that at issue is not what the parties agreed to in their lease but whether such portion of the agreement as limits the tenant's remedy is to be enforced in the face of the landlord's willful and unreasonable breach. Thus, whether there are other remedies otherwise afforded by the lease is irrelevant.

The dissenters maintain that BAS has an adequate remedy in specific performance. However, without the prospect of monetary damages, Solow will have no incentive to honor its obligations under the lease. If, by merely withholding its consent, Solow is able to protract a 10-day approval process under the lease into years of litigation each and every time BAS submits an alteration proposal, the tenant will be effectively deprived of its contractual right to render the leased space amenable to its business needs, unless it complies with the landlord's exorbitant demand. Thus, relegating BAS to the remedy of specific performance under the exculpatory provision would permit Solow to willfully breach the lease with impunity in order to exact unreasonable concessions from its tenant in clear violation of the implied covenant of good faith and fair dealing.

The dissenters misread and misapply the decisions in *Noble Lowndes Intl.*, which, like the instant matter, concerned the right of a breaching party to invoke a limitation of remedies provision. The subject clause provided, in pertinent part, that the plaintiff's recovery was confined to the amount paid under

the contract, "except for . . . damages arising out of [the defendant's] willful acts" (192 AD2d at 87). A jury found the defendant's acts to have been "willful" and awarded the plaintiff damages, presenting this Court with a narrow issue: "whether the evidence adduced at trial is sufficient, as a matter of law, to sustain a finding of willful misconduct" (*id.*). Our decision holds that the use of the term "willful" in connection with the limitation of recovery clause merely alluded to the customary constraint imposed upon such provisions, which denies them effect where damages are sustained as a result of tortious misconduct, not mere intentional nonperformance, that is to say, willful, wanton or grossly negligent acts (*id.* at 89-91; *see Kalisch-Jarcho*, 58 NY2d at 384-385).[2] Because a jury verdict was under review, the case has no bearing on the issue presently before us—whether a prima facie case of willful nonperformance has been sufficiently stated to submit the cause of action to the trier of fact.[3]

In affirming, the Court of Appeals agreed that by incorporating the exception for willful acts, "the parties intended to narrowly exclude from protection truly culpable, harmful conduct, not merely intentional nonperformance of the Agreement motivated by financial self-interest" (84 NY2d at 438). The Court went on to observe that there was insufficient proof of any intent to inflict harm; rather the "defendant's repudiation of the Agreement was motivated exclusively by its own economic self-interest in divesting itself of a highly unprofitable business undertaking in order to promote the sale of its computer software division to a competitor company" (*id.* at 439).

Seizing upon the latter observation, the dissenters contend that Solow's attempt to compel an additional payment of $6 million for a review it is already obligated to perform under the lease agreement is entirely proper because it is in Solow's economic self-interest to exact such a payment. It is evident that the Court of Appeals did not intend economic self-interest to be applied as an expansive principle to excuse all manner of misconduct. Economic self-interest is the motivation for fraud

---

**2.** As the decision notes, the term "willful" is a term of art in tort law, while it has attained no similar status in contract law (*Noble Lowndes Intl.*, 192 AD2d at 90). Thus, in excluding "willful acts" from the scope of the limitation of recovery provision, the parties merely intended to expressly provide the constraint otherwise implicitly imposed by operation of law (*see Graphic Scanning Corp.*, 116 AD2d at 26).

**3.** This issued was decided in the plaintiff's favor on a pretrial motion in *Noble Lowndes Intl.* (192 AD2d at 87-88).

(*e.g. Fragin v Fleet Bank*, 14 AD3d 312 [2005]), self-dealing (*e.g. Diamond v Oreamuno*, 24 NY2d 494 [1969]) and breach of fiduciary duty (*e.g. Oshrin v Hirsch*, 6 AD3d 352 [2004]); it does not excuse such misconduct nor preclude an injured party from seeking redress in the courts. The dissenters take liberty by divorcing the Court of Appeals' observation about economic self-interest from its factual context and applying it as a general principle of law. As noted in *Matter of Staber v Fidler* (65 NY2d 529, 535 [1985], quoting *Dougherty v Equitable Life Assur. Socy.*, 266 NY 71, 88 [1934]), " 'No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association.' "

In *Noble Lowndes Intl.*, there was no question, after a lengthy jury trial, that the conduct complained of—abandoning a software contract—was an act squarely grounded in the defendant's contractual rights (*see Marine Midland Bank v Hallman's Budget Rent-A-Car of Rochester*, 204 AD2d 1007, 1008 [1994] [pursuit of a legal right does not constitute economic duress]). The option to breach a contract and pay damages is always available, even where the breaching party had no intention of performing its obligations when it entered into the agreement (*see Briefstein v Rotondo Constr. Co.*, 8 AD2d 349, 351 [1959]).

The problem with applying this reasoning to the facts at bar is that Solow's misconduct extends well beyond a simple breach of the parties' agreement, seeking to impose upon BAS a new contractual burden unrelated to the lease. As a matter of law, performance of an act a party is already bound to perform cannot serve as consideration for a novel reciprocal obligation sought to be imposed on another party to an existing contract (*Ripley v International Rys. of Cent. Am.*, 8 NY2d 430, 441 [1960] ["A covenant to do what one is already under a legal obligation to do is not sufficient consideration for another contract"]; *see also Megaris Furs v Gimbel Bros.*, 172 AD2d 209, 212-213 [1991] ["one cannot be induced to tender a performance which is required as a part of a preexisting contractual obligation"]). Solow is obligated under its lease with BAS to conduct a timely review of its lessee's proposed alterations and not to unreasonably withhold its consent. Thus, Solow's review of the alteration plans cannot be construed as sufficient consideration for the $6 million demanded from BAS for this purpose.

Solow has breached the lease agreement with BAS "by withholding performance unless the other party agrees to some further demand" (*Friends Lbr. v Cornell Dev. Corp.*, 243 AD2d at 888), a substantial payment Solow does not even pretend is authorized under the lease. Thus, it is a classic attempt at economic duress. The defense of economic duress is not directly implicated in this case, however, because Solow's attempts to induce BAS to assume the new contractual obligation have been unsuccessful. Such lack of success does not, as the dissenters presuppose, constitute an affirmative demonstration of good faith. Solow can identify no provision in the lease agreement that might justify demanding a fee for reviewing prior alteration proposals; nor does Solow contend that it has not received reimbursement for its "actual out-of-pocket expenses reasonably incurred in connection with such Alterations." Its inability to coerce additional payment from BAS simply renders the defense of economic duress inapposite; it does not render Solow's withholding of performance under the lease any less wrongful (*Austin Instrument*, 29 NY2d at 130).[4]

The dissenters' conclusion that BAS cannot demonstrate malice, bad faith or tortious misconduct because it cannot establish economic duress is not supported by our decision in *Noble Lowndes Intl.* The infliction of economic duress constitutes bad faith (*see Ansonia Assoc.*, 257 AD2d at 91 ["the insurer has exhibited bad faith by using economic duress to deprive the insured of the very insurance coverage for which plaintiff contracted"]), affording a sufficient basis to bar enforcement of a limitation of remedies provision. It does not logically follow that the failure to demonstrate economic duress precludes a finding that "defendant's actions in connection with its performance of this agreement constitute willful (or wanton or reckless) misconduct or malice or bad faith, as those terms are defined in case law" (*Noble Lowndes Intl.*, 192 AD2d at 91). The defense of economic duress was not before us in *Noble Lowndes Intl.* since any recovery on that basis had been "expressly disavowed by plaintiff's counsel, on the record, during the precharge conference" (*id.*). The question before us was

---

4. The defense of economic duress provides that a party may void an agreement where it can establish that consent to the contract was obtained as the result of a wrongful threat that precluded the exercise of free will (*Austin Instrument*, 29 NY2d at 130; *805 Third Ave. Co.*, 58 NY2d at 451). Because BAS did not agree to assume a new obligation to pay Solow $6 million, it is unnecessary for it to raise economic duress as a defense to enforcement of that obligation.

whether the defendant's abandonment of the contract was "willful" so as to sustain the damages awarded to the plaintiff. As this Court stated in *Richbell Info. Servs. v Jupiter Partners* (309 AD2d 288, 302 [2003]), "even an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement." The operative distinction is that the defendant in *Noble Lowndes Intl.* did not breach its contract in order to derive additional remuneration from the plaintiff, whereas, here, Solow has engaged in a blatant attempt to compel additional exorbitant payment for services it was obligated to provide and for which it has already received the agreed-upon compensation.

The issue on this appeal is not, as the dissenters simplistically portray it, whether such additional payment might inure to Solow's economic self-interest; the pertinent inquiry is whether the "fee" sought from BAS is a matter of Solow's *legitimate* economic self-interest or, alternatively, whether it evinces the intent to inflict economic harm on BAS (*Noble Lowndes Intl.*, 84 NY2d at 439). Without any lawful basis to demand payment for reviewing the alteration plans, Solow's attempt to exact a multi-million-dollar sum from BAS might reasonably be perceived by a trier of fact as an intention to inflict monetary harm, which is tortious as a matter of law (*cf. Noble Lowndes Intl.*, 84 NY2d at 439) and renders the limitation on recovery contained in the lease unenforceable as a matter of public policy (*Kalisch-Jarcho*, 58 NY2d at 385).

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered July 29, 2005, which denied the motion of defendant Solow Building Company II, L.L.C. for partial summary judgment seeking dismissal of the fourth cause of action of the amended complaint, should be affirmed, without costs.

McGUIRE, J. (dissenting). A provision of the lease between defendant landlord Solow Building Company II, L.L.C. (SBC) and Montgomery Securities, the predecessor in interest to plaintiff tenant Banc of America Securities LLC (BAS), obligates BAS not to make any alterations to the premises without SBC's prior consent; SBC is obligated not to unreasonably withhold its consent and to approve or disapprove any proposed alteration within 10 business days of its receipt of BAS' final plans and specifications. Paragraph (E) of article 35 of the lease provides in relevant part as follows:

"Except as hereafter provided in this paragraph,

> Tenant hereby waives any claim against Landlord which Tenant may have based upon any assertion that Landlord has unreasonably withheld or unreasonably delayed any consent requested by Tenant, and Tenant agrees that its sole remedy shall be an action or proceeding . . . for specific performance, injunction or declaratory judgment or an arbitration proceeding as and to the extent permitted by Article [41] hereof. In the event of such determination, the requested consent shall be deemed to have been granted; however, Landlord shall have no liability to Tenant for its refusal or failure to give such consent. Tenant's sole remedy for Landlord's unreasonably withholding or delaying consent shall be as provided in this Section [sic] E."

Article 41 provides that "[i]f there is a dispute . . . as to the reasonableness of Landlord's refusal to consent to any Alteration . . . , Tenant may, at its option . . . submit such dispute to arbitration . . . under the Expedited Procedures provisions of the Commercial Arbitration Rules of the American Arbitration Association." Consistent with the provisions of article 35 (E), article 41 specifies that:

> "Landlord and Tenant agree that (i) the arbitrators may not award or recommend any damages to be paid by either party, (ii) in no event shall either party be liable for, nor be entitled to recover, any damages, and (iii) Tenant's sole remedy arising out of such arbitrator's decision shall be the right to . . . proceed on the basis that the requested approval [in] relation to such Alteration had been granted."

BAS' fourth cause of action seeks money damages for SBC's alleged breaches of its contractual obligation to approve or disapprove in a timely fashion numerous alterations to the premises proposed by BAS. In moving for partial summary judgment dismissing this cause of action, SBC contended that the provisions of article 35 (E) limiting BAS' remedies for such a breach to "an action or proceeding . . . for specific performance, injunction or declaratory judgment or an arbitration proceeding" barred BAS' claim for money damages. In its opposition, BAS relied on *Kalisch-Jarcho, Inc. v City of New York* (58 NY2d 377 [1983]) and other decisions holding that an exculpatory clause of a contract will not relieve a party of liability for willful

or grossly negligent acts. According to BAS, the repeated failure of SBC to perform its obligation to act on alteration proposals in a timely manner was part of an effort to "extort" $6 million from BAS. Although the lease requires BAS, upon substantial completion of any alteration, to pay SBC an amount equal to the "actual out-of-pocket expenses reasonably incurred" by SBC in connection with the alteration, SBC demanded that BAS pay a $6 million "review fee" above and beyond amounts already paid to SBC for such out-of-pocket expenses. Specifically, SBC claimed it was entitled to a review fee of 3% of BAS' total construction costs for all the alterations BAS had made (since the inception of the lease) and was preparing to make, costs that amounted to an estimated $200 million. BAS maintained that SBC committed intentional and malicious misconduct tantamount to extortion by demanding the review fee, contemporaneously breaching its obligation to act on BAS' alteration proposals in a timely manner and serving default notices on BAS for not paying the review fee.

In ruling on SBC's motion for partial summary judgment, Supreme Court was not persuaded by SBC's contention that as a matter of law its conduct was not such as would prevent enforcement of the contractual provision barring a claim for money damages. Noting that SBC relied on this Court's decision in *Metropolitan Life Ins. Co. v Noble Lowndes Intl.* (192 AD2d 83 [1993], *affd* 84 NY2d 430 [1994]), Supreme Court stated that SBC "correctly asserts that a party's deliberate abandonment of a contract in pursuit of its pecuniary interest fails to rise to the level of malicious or bad faith conduct necessary to avoid an otherwise applicable exculpatory clause" (2005 NY Slip Op 30143[U], *8). Nonetheless, Supreme Court distinguished *Noble Lowndes Intl.* on the ground that this Court had concluded "only after a full trial . . . that the conduct in question was not intentionally malicious or in bad faith as a matter of law" (*id.*). As Supreme Court also noted, "[c]ourts have repeatedly held that whether a party's conduct was malicious, grossly negligent, or in bad faith is a question for the trier of fact" (*id.* at *9).

I disagree with Supreme Court and conclude that SBC's motion for partial summary judgment dismissing the fourth cause of action should have been granted. As Supreme Court implicitly recognized, if the review fee demanded by SBC is supported by a plausible reading of the lease, BAS could not establish the kind of misconduct "smack[ing] of intentional wrongdoing" (*Kalisch-Jarcho*, 58 NY2d at 385) that would vitiate a limitation

of liability provision in a commercial contract. But even if the review fee were not so supported, it would not follow that this level of misconduct would be established. To the contrary, to the extent that, as BAS maintains, the review fee is without any plausible basis in the lease, SBC's demand for it is not likely to have intimidated a sophisticated party like BAS. Indeed, notwithstanding BAS' references to the "extortionary" character of SBC's demand, a demand so unsupported by the lease would instill derision rather than fear. An obvious popgun is not much of a threat or the weapon of choice for extortionists.

Although the review fee appears to be without any plausible support in the text of the lease, I need not decide the issue because I conclude, as a matter of law, that SBC's conduct did not rise to the level of the misconduct, "smack[ing] of intentional wrongdoing" (*Kalisch-Jarcho*, 58 NY2d at 385), that would warrant disregarding a contractual exculpatory clause.* In *Noble Lowndes Intl.* we rejected a similar claim of economic duress. There, we stressed that the Court of Appeals had held that a party threatened with a breach of contract unless it agreed to a higher price did not establish economic duress simply by proof of the wrongful threat not to perform. Rather, " '[i]t must also appear that the threatened party could not obtain the goods from another source of supply and that the ordinary remedy of an action for breach of contract would not be adequate' " (*Noble Lowndes Intl.*, 192 AD2d at 92, quoting *Austin Instrument v Loral Corp.*, 29 NY2d 124, 130-131 [1971]). Here, BAS cannot show that SBC's threat to terminate the lease unless it paid the review fee left it with no legal recourse. Under the lease, BAS was entitled either to bring an action for "specific performance, injunction or declaratory judgment" or to avail itself of the right to expedited arbitration proceedings. Even assuming that SBC was "acutely aware of how anxious" BAS was to have its alteration proposals approved, BAS wholly failed to show the inadequacy of the very remedies it agreed to in the lease.

---

* SBC argues that enforcement of the contractual clauses at issue in *Kalisch-Jarcho* and *Corinno Civetta Constr. Corp. v City of New York* (67 NY2d 297 [1986]) would have left the parties aggrieved by a breach "with no remedy whatsoever." Because enforcement of the provisions of the lease barring a claim against SBC for money damages on account of any failure or refusal to give its consent would not leave BAS without a remedy, SBC contends as well that this provision would be enforceable even if BAS could make the showing required by *Kalisch-Jarcho*. Although BAS' other remedies under the lease are relevant to its claim of extortion, I need not and do not address this broader contention.

As the Court of Appeals held in *Noble Lowndes Intl.*, moreover, a refusal to perform a contractual obligation that is "motivated exclusively by [the nonperforming party's] own economic self-interest" is not conduct that will vitiate an agreed-upon limitation of liability (84 NY2d at 439). BAS seeks to distinguish *Noble Lowndes Intl.* on the ground that "SBC's conduct, unlike that of the defendant in *Noble Lowndes Intl.*, had the specific and purposeful intention of causing BAS harm—the inability to use leased space which it knew BAS badly needed in its business—in the hope it would force BAS to pay SBC's demanded ransom." To the extent this argument rests on the claim of extortion, it is unavailing for the reasons stated above. Nor can BAS avoid the holding of *Noble Lowndes Intl.* by claiming that SBC acted with "the specific and purposeful intention of causing BAS harm." Such an intent could be posited whenever a party to a contract acts to advance its economic self-interest at the expense of the other party. As BAS concedes, SBC's ultimate goal was to advance its own economic self-interest. SBC should not be deprived of the agreed-upon limitation on liability merely because it may have acted with another motivation (*cf. Matter of Pamilla v Hospital for Special Surgery,* 223 AD2d 508, 509 [1996] [upholding dismissal of cause of action for tortious interference with prospective economic advantage because defendants' actions "were at least partially motivated by their own self-interest"]).

Because BAS failed to adduce any facts from which misconduct by SBC "smack[ing] of intentional wrongdoing" (*Kalisch-Jarcho,* 58 NY2d at 385) could be found by the trier of fact (*see Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]), Supreme Court should not have denied defendant's motion for partial summary judgment on the ground that "whether a party's conduct was malicious, grossly negligent, or in bad faith is a question of fact for the trier of fact." Finally, BAS' claim that SBC's conduct constituted an abandonment of the lease is without merit (*Kalisch-Jarcho,* 58 NY2d at 386 n 8).

Accordingly, I would reverse and grant SBC's motion for partial summary judgment dismissing the fourth cause of action for money damages based on SBC's alleged breach of contract in failing to approve or disapprove in a timely and reasonable fashion BAS' various proposed alterations to the leased space.

MARLOW and GONZALEZ, JJ., concur with TOM, J.P.; SAXE and McGUIRE, JJ., dissent in a separate opinion by McGUIRE, J.

Order, Supreme Court, New York County, entered July 29, 2005, affirmed, without costs.