[959 NYS2d 10]

Devash LLC, Appellant, v German American Capital Corpora-
tion et al., Defendants, and CWCapital Asset Manage-
ment LLC et al., Respondents.

First Department, January 10, 2013

72

### APPEARANCES OF COUNSEL

*Meister Seelig & Fein LLP*, New York City (*Stephen B. Meister, David E. Ross, Randi L. Maidman* and *Remy Stocks* of counsel), for appellant.

*Friedman Kaplan Seiler & Adelman LLP*, New York City (*Robert J. Lack, Richardo Solano Jr.* and *Jeffrey R. Wang* of counsel), for respondents.

*Scott D. Spelfogel*, New York City, for CWCapital Asset Management LLC, respondent.

### OPINION OF THE COURT

Saxe, J.

Plaintiff Devash LLC claims that Bank of America, N.A. (BOA), as trustee for the holder of its securitized $250 million mortgage loan, and CWCapital Asset Management LLC, the appointed special servicer of plaintiff's loan, entered into what plaintiff terms a "predatory lending scheme," not in regard to the terms of the mortgage loan itself, but due to the manner in which defendants engaged in selling plaintiff's loan to a third party that planned to foreclose and take possession of the property. Plaintiff seeks money damages against BOA and CWCapi-

tal based on claims of breach of contract and tortious interference.

According to the complaint, in 1999 plaintiff purchased a 26-story office and retail building located at 1775 Broadway, also known as Three Columbus Circle, and then embarked on a multimillion dollar comprehensive renovation. On January 9, 2006, plaintiff refinanced the mortgage debt on the property by obtaining the $250 million loan at issue here from Wachovia Bank, N.A. On June 26, 2006, Wachovia assigned the loan to Wells Fargo Bank, N.A., as trustee for the Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-C-23 (CMT-C23). On or about March 31, 2009, defendant BOA replaced Wells Fargo as trustee for CMT-C23.

The loan required interest payments through January 2010, with payments of principal scheduled to begin in February 2010, at which time the monthly payment obligation would increase substantially. With an occupancy rate in the building of approximately 23%, plaintiff approached BOA in January 2010 seeking to negotiate a restructuring of the loan, to include either forbearance from collecting principal payments or acceptance of smaller principal payments, while plaintiff found tenants for the building. BOA agreed to engage in these restructuring negotiations, and transferred the loan to defendant CWCapital as special servicer. Although BOA issued a notice of default on January 21, 2010, and on March 24, 2010 it declared the loan accelerated, CWCapital assured plaintiff that these steps were simply standard operating procedures, and that its restructuring proposal was under active consideration. Because CWCapital indicated that BOA would only consider restructuring the loan if plaintiff kept up its interest payments to BOA, plaintiff continued to pay millions of dollars in interest, real estate taxes, and construction costs, while restructuring negotiations were purportedly proceeding. During this period, plaintiff alleges, it invested more than $22 million in fresh funds.

Plaintiff alleges that in May 2010 BOA and plaintiff reached a restructuring agreement in principle, and that in early June 2010 the final terms of the agreement were set, pursuant to which plaintiff would continue making payments of interest only while it found tenants for the building. However, although plaintiff executed and delivered the prepared loan modification documents on June 11, 2010, BOA never countersigned the

documents. According to the complaint, BOA did not enter into the restructuring agreement because defendant the Related Companies, L.P. (Related), a well-known developer that was developing the nearby Time Warner Center at Columbus Circle, had offered to purchase the loan from BOA. Plaintiff asserts that it was Related's plan to obtain the property through foreclosure, demolish the newly-renovated office building and construct a new mixed use tower to house a Nordstrom department store and luxury condominiums. It contends that beyond simply selling plaintiff's loan to Related, BOA and CWCapital took affirmative steps, damaging to plaintiff, to assist Related in its goal of foreclosing on the property after purchasing the loan. Specifically, plaintiff complains that CWCapital assisted Related by (1) inducing plaintiff to remain current on interest and other required payments under the loan, (2) making false representations that restructuring negotiations were proceeding in good faith, and (3) withholding consent to new leases in violation of the terms of the loan. Plaintiff alleges that these actions were undertaken to make foreclosure inevitable and ensure that the property had as few tenants as possible when Related took possession.

One of those proposed leases was with HQ Global Workplaces LLC (HQ), for a full floor of the building totaling approximately 33,000 rentable square feet with a competitive market rent per square foot. Plaintiff alleges that CWCapital granted conditional approval of a proposed lease to HQ five months earlier, but that on July 20, 2010, after Related raised the prospect of purchasing the loan, the special servicer sent plaintiff a memorandum incorrectly claiming that the terms of the HQ lease had been changed since it granted approval, and that it would not consent to the lease without the inclusion of a demolition clause permitting the landlord to terminate the lease on six months' notice in the event it elected to demolish the building, without compensation to the tenant. As a result, plaintiff claims, HQ ceased its lease negotiations with plaintiff, and prompted the brokerage community to refrain from bringing prospective tenants to the property.

Another proposed lease was with William Morris Endeavor Entertainment LLC, a prestigious global entertainment agency, for three full floors, amounting to nearly 77,000 square feet of rentable space, the aggregate rental income of which, including escalations, would allegedly exceed $100 million. Plaintiff submitted for review a term sheet containing the material eco-

nomic terms of the proposed lease, but defendants refused to review it, and instead insisted that plaintiff deliver a fully negotiated lease for review. As a result, negotiations with William Morris were terminated.

On September 1, 2010, BOA assigned the loan to Three Columbus Assignee, LLC, an entity formed by Related. Three Columbus then immediately reassigned the loan to German American Capital Corporation (GACC), a subsidiary of Deutsche Bank, and two days later, GACC filed a foreclosure action against plaintiff. GACC also demanded payment of a $54 million prepayment charge from plaintiff in the event it sought to repay the loan.

Plaintiff responded by commencing this action against BOA, CWCapital, GACC, Related, and Three Columbus. As against GACC, Related, and Three Columbus, the complaint sought a declaration that GACC was not entitled to collect any prepayment charge, and injunctive relief against the foreclosure action. These causes of action were resolved in a settlement in which plaintiff repaid the principal of the loan along with interest, legal fees, and a $5 million prepayment charge.

The three causes of action that remain are for breach of contract, tortious interference with contract and tortious interference with prospective economic advantage against BOA and CWCapital, for which plaintiff seeks damages representing lost rents, funds unnecessarily spent, and lost value to the property. Plaintiff alleges that BOA breached its contractual obligations under the mortgage loan agreement by wrongfully withholding consent to the proposed leases with HQ and William Morris for vacant space in its building; that CWCapital tortiously interfered with plaintiff's contract with BOA by causing BOA to unreasonably reject lease proposals; and that both defendants tortiously interfered with plaintiff's prospective economic relations with its proposed tenants and in its operation of the building. Plaintiff asserts that it unnecessarily expended more than $22 million in 2010 in reliance on CWCapital's instructions during the fruitless loan restructuring negotiations, lost rents the proposed tenants would have paid, and was forced to take on an equity partner in order to pay off the loan, losing a portion of the property's value.

CWCapital and BOA moved to dismiss the remaining causes of action pursuant to CPLR 3211 (a) (1) and (7). On such a motion we are required to accept all of the allegations in the complaint as true, and to draw all inferences from those allega-

tions in the light most favorable to the plaintiff, unless the documentary evidence conclusively disproves an alleged fact (*see generally Leon v Martinez*, 84 NY2d 83, 87 [1994]).

■ Even accepting the allegations as true, the third cause of action for breach of contract was properly dismissed. The claim against BOA rests largely on the assertion that the lender violated the contractual prohibition against unreasonably withholding its consent to proposed leases. Plaintiff particularly relies on the allegation that CWCapital improperly insisted on the insertion of a demolition clause, both because such a provision is unheard of in the present market, and because a proposed lease that did not contain such a clause had already been approved by the special servicer. However, plaintiff seeks money damages and thus, the claim was properly dismissed, not because plaintiff failed to plead that the lender's consent was unreasonably withheld, but because the contractual limitation contained in the subject mortgage loan agreement limits plaintiff's remedies for unreasonably withheld consent to injunctive relief or declaratory judgment.

Plaintiff's reliance on *Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.* (47 AD3d 239 [1st Dept 2007]) is misplaced. The *Solow* decision, which declined to dismiss the plaintiff tenant's claim against its landlord for damages based on an alleged breach of contract, was based on the landlord's pattern of refusing to either approve or disapprove proposed alterations while at the same time demanding that the tenant pay it $6 million— despite the lack of any lease provision even arguably justifying such a payment. Although the lease in that case contained a provision limiting to specific performance the tenant's remedy for loss caused by delay in the approval of alterations, this Court declined to apply that limitation, observing that "[e]nforcement of such a provision is precluded when 'the misconduct for which it would grant immunity smacks of intentional wrongdoing' . . . , 'as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith' " (*id.* at 244 [citations omitted]). However, as we explained in *Meridian Capital Partners, Inc. v Fifth Ave. 58/59 Acquisition Co. LP* (60 AD3d 434, 434 [1st Dept 2009]), the type of intentional wrongdoing that could render a limitation in the lease unenforceable is that which is "unrelated to any legitimate economic self-interest," as was the case in *Solow*.

Simply put, plaintiff's allegations do not establish the "type of intentional wrongdoing, unrelated to any legitimate economic

self-interest" (*id.*) that would render the limitation of remedies provision unenforceable. As the complaint itself acknowledges, CWCapital's failure to approve the proposed leases was intended to maximize the lender's available options and the value of the property and the loan. Consequently, CWCapital's alleged conduct advanced a legitimate economic self-interest. Even assuming for purposes of this motion that the withholding of consent to the leases was not supported by the terms of the lease, plaintiff's only remedy was to obtain injunctive or declaratory relief; money damages are not available. The parties' dispute regarding the form of the HQ lease the lender preliminarily approved, and whether it contained a demolition clause, is irrelevant to our analysis; either way, plaintiff's available remedy is still limited to injunctive or declaratory relief.

▮ Nor does BOA's asserted right to a prepayment penalty, stated in its March 24, 2010 acceleration notice and its July 8, 2010 letter setting forth a "corrected" payoff balance, amount to grounds for a claim of breach of contract. BOA took no actions to advance the position that it was entitled to such a payment. By the time the action was commenced, BOA was no longer in a position to even attempt collecting such a payment. There is no support in the alleged facts for the claim that BOA's assertion in the notice and letter, whether correct or incorrect, that it had a right to collect a prepayment charge, somehow damaged plaintiff's position or standing in the marketplace.

▮ Nor is a breach of defendants' contractual obligation of good faith and fair dealing properly alleged, based on the failure to approve the leases, the failure to restructure plaintiff's loan, or the failure to inform plaintiff that the lender was considering selling the loan. Any assertion that the entire January to June 2010 negotiation for restructuring was a sham is contradicted by the allegations of the complaint, which asserts that Related's interest in purchasing the loan was expressed in May or June. Moreover, defendants had no contractual obligation either to enter into the negotiated modification or to inform plaintiff that it was negotiating with a potential purchaser of the loan. Indeed, the express language of the parties' pre-negotiation agreement expressly protected the lender from liability if it decided not to enter into a restructuring agreement providing that "no agreement reached with respect to any matter . . . shall have any effect whatsoever unless such agreement is reduced to writing, signed and delivered by all parties' authorized representatives."

▮ Plaintiff's fourth cause of action against CWCapital, for tortious interference with plaintiff's contract with BOA, was

also properly dismissed. CWCapital was acting as BOA's agent, and "[i]t is well settled that [a]n agent cannot be held liable for inducing [its] principal to breach a contract with a third person, at least where [it] is acting on behalf of [its] principal and within the scope of [its] authority" (*Nu-Life Constr. Corp. v Board of Educ. of City of N.Y.*, 204 AD2d 106, 107 [1st Dept 1994] [internal quotation marks omitted], *lv dismissed* 84 NY2d 850 [1994]). Plaintiff's allegation that CWCapital was acting "at the behest" of a third party developer who desired to acquire the property at issue, rather than as BOA's agent, is conclusory and therefore insufficient to support the cause of action.

▮ The fifth cause of action, for tortious interference with prospective economic relations, is also fatally flawed. "Where there has been no breach of an existing contract, but only interference with prospective contract rights, . . . plaintiff must show more culpable conduct on the part of the defendant" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996], citing *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 193-194 [1980]). Notably, the complaint recognizes that CWCapital's actions were intended to provide BOA with more options and greater flexibility to maximize the value of the loan and because it considered a potential acquisition of the loan as a means to obtain a windfall through early repayment. These assertions serve to establish that CWCapital's alleged interference "was neither wrongful nor motivated solely by malice, as opposed to its normal economic interest" (*Advanced Global Tech., LLC v Sirius Satellite Radio, Inc.*, 44 AD3d 317, 318 [1st Dept 2007]). Nor does the complaint allege that any tortious activity was directed at the prospective lessees, rather than directly against plaintiff (*see Carvel Corp. v Noonan*, 3 NY3d 182, 192 [2004]). Thus, plaintiff has failed to plead the elements of this claim.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered August 1, 2011, which granted defendants CWCapital Asset Management LLC and Bank of America, N.A.'s motion to dismiss the third, fourth and fifth causes of action, should be affirmed, without costs.

ANDRIAS, J.P., MOSKOWITZ, ABDUS-SALAAM and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered August 1, 2011, affirmed, without costs.